**PITNEY et al. v. DUFFY, Former Collector of Internal Revenue.**

**SAME v. FERGUSON, Collector of Internal Revenue.**

(District Court, D. New Jersey. June 30, 1923.)

1. **Internal revenue ☞7—Contributions to Grand Army post held deductible from income; "corporation organized and operated exclusively for charitable purposes."**

Under Revenue Act 1918, § 214 (a), subsec. 11 (Comp. St. Ann. Supp. 1919, § 6338⅛g), authorizing deduction from individual incomes of contributions made to "corporations organized and operated exclusively for charitable purposes," contributions to a Grand Army post, organized under a state law as a charitable association, and whose funds are actually used for charitable purposes, are deductible.

2. **Internal revenue ☞7—Tax paid by obligor corporation on tax-free·bonds is not part of "income" of bondholder.**

The normal tax paid by debtor corporations on tax-free covenant bonds, under Income Tax Act 1917, § 1205 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 6336i[c]), or Revenue Act 1918, § 221 (b), being Comp. St. Ann. Supp. 1919, § 6336⅛jj, is not a part of the "income" of the bondholder, and not required to be included in his return.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Income.]

At Law. Actions by John O. H. Pitney and John R. Hardin executors of the will of Marcus L. Ward, deceased, against Charles V. Duffy, former Collector of Internal Revenue for the Fifth District of New Jersey, and against Frank C. Ferguson, Collector of Internal Revenue for the Fifth District of New Jersey. Judgment for plaintiff in each case.

Corwin Howell, of Newark, N. J., for plaintiffs.

Walter H. Bacon, Jr., Asst. U. S. Atty., of Bridgeton, N. J., for defendants.

BODINE, District Judge. These cases were tried without a jury. In the first suit three questions are involved: First, Marcus L. Ward, the decedent, sold in 1917 a tract of meadow land in the neighborhood of the Port Newark development in the city of Newark for $8,000. In his income tax return, he placed the March, 1913, value at $5,000, and accounted for a profit of $3,000. The government fixed the actual value of the land at $300, and assessed an additional tax of $4,700. Second, the government assessed an additional tax upon the sum of $1,660.80, being 2 per cent. normal tax paid by corporations issuing bonds with tax-free covenant clause owned by the decedent. Third, the decedent contributed the sum of $300 to Marcus L. Ward Post, Grand Army of the Republic. The government ruled that this was not deductible as a contribution to a charitable use and assessed a tax thereon.

In suit No. 2, two questions are involved: First, the alleged receipt by the decedent as income of the 2 per cent. normal tax paid by debtor corporations on tax-free covenant bonds held by the decedent in 1918, amounting to the sum of $1,558.60. Second, a $300 contribution to

the Marcus L. Ward Post, G. A. R., held not a contribution to a charitable use.

Following is a summary of the elements of claim:

Suit No. 1.

Count No. 1, for Year 1917.

| | |
|---|---:|
| Additional tax paid on meadow land.....................$1,645.00 | |
| Additional tax paid on tax-free covenant bonds........... 581.27 | |
| | |
| Total claim for 1917............................. | $2,226.27 |

Suit No. 1.

Count No. 2, for Year 1919.

| | |
|---|---:|
| Additional tax paid on account of contribution to Marcus L. Ward Post ...................................... | $ 192.00 |

Suit No. 2, for Year 1918.

| | |
|---|---:|
| Additional tax paid on tax-free covenant bonds..........$1,059.84 | |
| Additional tax paid on account of contribution to Marcus L. Ward Post ...................................... 204.00 | |
| | |
| Total claim for 1918............................. | $1,263.84 |

The question with respect to the profit on the sale of meadow land is purely a fact question. In March, 1913, the Port Newark development was a reality. The city assessed the property in question at some $1,200. The reason the assessment was so low was that the land was not useful. No buildings were thereon erected. The landowner received none of the advantages of schools or police and fire protection. Consequently the assessors, in making an equitable distribution of the burden of taxation, lowered the assessment in proportion to the amount of rate applied for the above purposes. In 1917 the assessed value was some $2,000. The ratio between the assessed value in 1917 and 1913 is similar to the ratio between the $8,000 actually received by Mr. Ward at the time he sold the property and the 1913 value of $5,000 fixed by him. Further than this, the testimony of real estate experts indicates that the 1913 valuation was proper.

I have no hesitancy in finding that the value of the land in March, 1913, was $5,000, but I do not wish to pass this phase of the case without noting the action of the department in placing an arbitrary assessment, as of March 1913, of $300. Clearly no real estate situate in Newark could increase between 1913 and 1917 over 2,500 per cent., nor is reason assigned for the government's action in selecting a valuation 25 per cent. of a city assessment.

[1] Secondly, as to the contribution to the Marcus L. Ward Post, G. A. R.: These contributions of $300 in each of the years 1918 and 1919 were deducted in pursuance of section 214 (a), subsection 11, of the Revenue Act of 1918, approved February 24, 1919 (Comp. St. Ann. Supp. 1919, § 6336⅛g), permitting deductions of contributions made within the taxable year to corporations organized and operated exclusively for charitable purposes. The Grand Army post in question was organized as a charitable corporation under an act of the state

of New Jersey to incorporate benevolent and charitable associations, approved April 9, 1875 (Rev. of N. J. 1877, p. 79).

The testimony of the officers of the post clearly indicates that the charter provisions had been strictly adhered to, and the funds of the post were used for alleviating the needs of members thereof who had, during the Civil War, rendered the highest service to the Union. The contributions made by Mr. Ward were clearly deductible, and the action of the Commissioner in assessing the taxes in question was illegal, and the executors are entitled to recover the sum sued for. In re Rockefeller, 177 App. Div. 786, 165 N. Y. Supp. 154, the court held that the character of a corporation was determined by its charter. In addition, the funds of the post were actually used for charitable purposes.

[2] The third question is with respect to the additional taxes based upon the 2 per cent. normal tax paid by debtor corporations on tax-free covenant bonds held by the decedent, upon which the Commissioner assessed as additional income tax during the years in question. The Commissioner's action in this respect finds support in the ruling of the District Court for the Eastern District of Pennsylvania in the case of Massey v. Lederer, 277 Fed. 123. This decision is not binding. The Sixteenth Amendment to the federal Constitution confers upon Congress "power to lay and collect taxes on incomes, from whatever source derived." The 2 per cent. tax paid by the debtor corporation on tax-free covenant bonds is not income in the hands of the obligee.

The brief filed by counsel for the plaintiffs is so exhaustive that to restate his argument is a profitless task. To decide the case involves an acceptance of much that is most admirably stated by him. The learned judge in Massey v. Lederer, supra, bases his reasoning on three cases clearly distinguishable.

In Houston Belt & Terminal Railway Co. v. United States, 250 Fed. 1, 162 C. C. A. 173 (Fifth Circuit), there was a corporate arrangement by which interest payments due on a mortgage of a holding corporation, known as the Terminal Company, were paid direct by four tenant railroad companies to the mortgagee. It was held that this payment was made on behalf of the Terminal Company, and that it was a part of the latter's income. From the opinion it appears that the real fact was that no rental, or a wholly inadequate rental, was charged to its tenants, they paying the interest on its mortgage to the mortgagee. The court, of course, brushed aside such a transparent scheme in evasion of the act (the Excise Tax Act upon corporations of 1909 [36 Stat. 112]), and held that the interest payments were equivalent to rent due and received by the Terminal Company.

Similarly in Blalock v. Georgia Railway & Electric Co., 246 Fed. 387, 158 C. C. A. 451 (Fifth Circuit), a scheme to circumvent the same act of 1909 was held to be bad. In that case there was a corporate arrangement by which the plaintiff corporation made a lease of its property to another corporation lessee, with provision that the lessee should pay a dividend direct to the shareholders of the plaintiff corporation. It was held that this dividend was in fact rental belonging in the first instance to the plaintiff corporation, and therefore consti-

tuted income of the plaintiff corporation. The present case has no similarity whatever to the above two cases.

The third case cited is Rensselaer & Saratoga Railroad Co. v. Irwin, 239 Fed. 739, affirmed in 249 Fed. 726, 161 C. C. A. 636. The decision in this case was by the District Court for the Northern District of New York, and the appeal was, of course, to the Circuit Court of Appeals for the Second Circuit. In that case the Income Tax Act of October 3, 1913 (38 Stat. 114), was under consideration. There was a lease of one corporation to another, whereby the lessee paid the interest on certain bonds and also a dividend to the stockholders of the lessor corporation. The agreement, which was made May 1, 1871, and appears from the opinion to have been intended to circumvent the Income Tax Act then in effect, provided that the lessee corporation *should not pay* the then income tax or any income tax that might thereafter be imposed on the said dividends and interest, and that, if required by law to pay the same, it might deduct the amount from the interest and dividends. The majority of the court on appeal took the view that the money paid by the lessee was in fact rent belonging to the lessor, on which it should pay income tax. The attitude of the court is well expressed in the quotation (249 Fed. near the bottom of page 728, 161 C. C. A. 638), in an earlier decision of the same court, as follows:

"The fiction referred to cannot be permitted to accomplish a fraud upon the statute and an evasion of its obligations."

The cases all turn on the point that an attempt was being made to evade a statute by preventing certain income from passing through a natural conduit, the lessor corporation, to which it properly belonged. In the present case the acts of Congress themselves provide that the 2 per cent. tax money shall be paid direct by the obligor corporation to the United States government. There is no suggestion in the act, or in any agreement of the parties, that the 2 per cent. is in fact additional income or interest of the bondholder over and above the full interest rate agreed upon, all of which the bondholder receives. It is a pure fiction through which the Commissioner endeavors to saddle the bondholder with this increment "in the nature of additional interest," which he can never enjoy, and which he does not even own the right to sue for. War Revenue Act 1917, § 1200 (Comp. St. 1918, § 6336b), provides that:

"Net income * * * shall include gains, profits, and income derived from salaries, wages," etc., "also from interest, rents, dividends," etc., "or gains, or profits and income derived from any source whatever."

The Revenue Act of 1918 describes, in section 213 (Comp. St. Ann. Supp. 1919, § 6336⅛ff), income in similar language. Both acts provide for the deduction, by the debtor corporation, of the 2 per cent. normal tax where obligations containing a tax-free covenant exist. It never occurred to any one that the normal tax, so withheld by the obligor corporation, was income of the obligee during the years 1917 and 1918.

The first regulation to the contrary is article 31 of Regulation 45, as revised April 19, 1919, after the returns for both the years 1917

and 1918 had been filed. The regulation is to the effect that the 2 per cent. tax paid by the obligor corporation pursuant to the tax-free covenant is in the *nature of additional interest paid* to the bondholder. Obviously this is pure fiction, for that which the bondholder never received cannot be regarded as falling within the definition of income as contained in either of the acts in question. The tax return blanks prepared by the government for the years 1917 and 1918 contain no place where the taxpayer could set forth this item not received by him. Congress, when it passed the Revenue Act of 1921 (42 Stat. 254), provided, in section 234 (a) (3), referring to the tax withheld on tax-free covenant bonds:

"Nor shall such tax be included in the gross income of the obligee."

This action by Congress is indicative of its desire to make it clear that it was not taxing citizens upon a fiction but upon their income. It is—

"well settled * * * that the citizen is exempt from taxation, unless the same is imposed by clear and unequivocal language, and that where the construction of a tax law is doubtful, the doubt is to be resolved in favor of those upon whom the tax is sought to be laid." Spreckels Sugar Co. v. McClain, Collector, 192 U. S. 397, 24 Sup. Ct. 376, 48 L. Ed. 496; American Net & Twine Co. v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55, 35 L. Ed. 821.

"Income" means that which has come in, just as expenditures mean what has been paid out or goes out. United States v. Schillinger, 14 Blatchf. 71, Fed. Cas. No. 16,228; United States v. Indianapolis & St. Louis R. Co., 113 U. S. 711, 5 Sup. Ct. 716, 28 L. Ed. 1140; Railroad Co. v. United States, 101 U. S. 543, 25 L. Ed. 1068. See, also, definition of income by Mr. Justice Pitney in Eisner v. Macomber, 252 U. S. 189, 40 Sup. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

The Commissioner of Internal Revenue, when, on April 17, 1919, he promulgated his ruling, with respect to imposing an additional tax, read into the congressional enactment something which was not there when the acts were originally passed, and was not placed there when they were re-enacted, and which was expressly prohibited in 1921. He reversed his own previous rulings with respect to the matter, and decided that the tax paid by the corporation upon its tax-free covenant bonds was an additional income of the taxpayer.

Plaintiffs may have judgment in both suits on all counts.