### APPEAL OF ISABEL ANDERSON.

Docket No. 1394.    Decided October 4, 1926.

1. Net value of rights to purchase stock in addition to stock held, and in proportion to such stock so held, enters into computation of cost of original stock purchase, in determining amount of gain or loss in sale thereof.

2. Taxes paid at source on tax-free covenant bonds are not taxable income.

*Allison R. Brown, C. P. A.*, for the petitioner.
*M. N. Fisher, Esq.*, for the Commissioner.

This appeal is from the determination of deficiencies in income tax for the years 1919 and 1920, in the respective amounts of $11,557.63 and $183.99.

The deficiencies arose by reason of the fact that the Commissioner used the amount of the proceeds of the sale of certain rights incident to stock held by the petitioner to reduce the amount of loss accruing on the sale of said stock, and further ruled that a 2 per cent tax paid by the obligor on tax-free covenant bonds constituted additional income.

#### FINDINGS OF FACT.

The petitioner is an individual residing in Washington, D. C. In 1903 she had purchased 5,796 shares of stock of the Pennsylvania Railroad Co. In 1903 she sold 386 shares, and again in 1908 she purchased 245 shares. On March 1, 1913, she owned 5,655 shares the cost of which, as shown upon her books, was $338,767.60. The market value of the said stock on March 1, 1913, was $338,593.13. The cost of the several purchases are shown in computations, as indicated herein.

At several dates, from 1903 to June 1, 1913, there were issued and delivered to petitioner certificates which entitled her to purchase

additional stock at favorable prices, which certificates were assignable. She received and sold these certificates as follows:

In 1903 she received and sold certificates entitling her to purchase
one new share at $60 for each three shares held by her. She sold
the certificates for_____ $8,694.00

In 1909 she received and sold certificates entitling her to purchase
one new share at $50 for each four shares held by her. She sold
the certificates for _____ 22,726.98

In 1911 she received and sold certificates entitling her to purchase
one new share at $50 for each ten shares held by her. She sold
the certificates for_____ 5,891.50

In 1913 she received and sold certificates entitling her to purchase
one new share at $50 for each ten shares held by her. She sold
the certificates in June, 1913, for_____ 3,053.80

Making a total amount received for all the certificates of_____ 40,366.28

In 1919 the petitioner sold the stock for $226,096.13, and claimed a loss of $112,497, the difference between the March 1, 1913, value, as shown upon the books, and the selling price. The Commissioner determined that the book cost of $338,767.60 was not the true cost and that the actual cost was $321,000.42, which was less than the March 1, 1913, value, and allowed a loss of $94,904.29. The Commissioner arrived at such cost as follows:

1901, 1902, 1903:
5,796 shares cost_____ $347,539.89

1903:
1 share cost, old_____ 59.962
$\frac{1}{3}$ share cost new at $60_____ 20.00

1$\frac{1}{3}$ shares cost_____ 79.962
1 share, old and new, average_____ 59.9715

1908:
245 shares cost $16,170. $66 per share.
Old shares, 5,410 (386 were sold in 1903) $59.9715 a share_____ 324,445.815
245 at $66_____ 16,170.00

                                                              340,615.815
$340,615.815 divided by 5,655_____ 60.232

1909:
1 share old, cost_____ 60.232
$\frac{1}{4}$ share, new, at $50_____ 12.50

1$\frac{1}{4}$ shares cost_____ 72.732
1 share, old and new, average_____ 58.186

1911:
1 share adjusted_____ 58.186
$\frac{1}{10}$ share, new, at $50_____ 5.00

1$\frac{1}{10}$ shares, old and new_____ 63.186
1 share, old and new, average_____ 57.441
March 1, 1913 value_____ 59.875

1913 :

| | |
|---|---:|
| 1 share adjusted_____ | $57. 441 |
| $\frac{1}{10}$ new share, at $50_____ | 5. 00 |
| 1$\frac{1}{10}$ shares, old and new_____ | 62. 441 |
| 1 share adjusted_____ | 56. 764 |
| 5,655 shares at $56.764 a share_____ | 321, 000. 42 |
| Selling price in 1919_____ | 226, 096. 13 |
| Loss_____ | 94, 904. 29 |

In calculating the petitioner's income for the year in question, the Commissioner included $822.59, which was the amount of 2 per cent tax withheld at source and paid by the obligor on tax-free covenant bonds owned by the petitioner.

## OPINION.

LOVE: In this appeal there is no controversy between the petitioner and the Commissioner as to the facts and amounts entering into the computation of loss resulting from the stock sale in question. The sole issue is whether or not the cost of the stock should be affected by the subsequent sale of certain rights to purchase additional stock. The petitioner's cost, as shown by her books, is in excess of the March 1, 1913, value, so in computing the loss resulting from the sale in 1919 she merely subtracted the sale price from the March 1, 1913, value. The Commissioner, on the other hand, contends that the March 1, 1913, value, as shown on the books, should be reduced by reason of the fact that at various times she sold certain rights, which she had acquired by virtue of the ownership of the stock, to purchase additional stock, for which she received substantial sums, the amounts of which are not in dispute. The Commissioner reduced the cost in the manner set forth in the findings of fact, which resulted in decreasing the loss in 1919.

The Supreme Court has definitely approved this plan or formula for determining the cost and gain or loss where rights to purchase stock are received and then sold by the recipient.

In the case of *Safe Deposit & Trust Co.* v. *Miles,* 273 Fed. 822, the petitioner had been issued certificates of right to purchase stock—one new share for each old share held—the price to be paid for the new being $150 per share, while the old stock had cost $710 per share. The District Court which decided the case, in a written opinion, held:

The plaintiff, in the right of every share it held, and which had cost it, as just mentioned, $710, could, by paying $150 a share more, get another, so that it would have two, which in the aggregate would have cost it $860, or $430 apiece. There would be no way of distinguishing between the old

and the new. If the latter was something which had not before existed, almost the same might as truthfully be said of the former. Its characteristics had undergone a great change. Before the issue of the new stock, it represented one twenty-thousandth of the capital of the company; afterwards it stood for but one forty-thousandth. Moreover, if the plaintiff had in person taken the new stock, and had had its old and new consolidated into one certificate, and had subsequently sold a part of its holdings, it could not say that that with which it parted was out of the old, or out of the new, or partly out of both. In determining the cost of its shares for the calculation of the profit or loss upon resale, it would be necessary to assume that they had one and all cost the holder an equal amount, which in the case of the plaintiff here was $430 a share.

It certainly could make no difference that without waiting until the stock was issued, and then selling, it sold the right to the new stock, and made it part of the consideration that the buyer should assume for it the payment of the $150 per share exacted by the company. All that would have to be borne in mind in comparing the two ways of reaching the same end is that, if the right was sold, the price really received for the new share was $150 more than the sum paid to the seller, which in the case at bar was $358.48. That was equivalent to $508.48 for a fully paid for share, and the $78.48 by which it exceeded the $430, which the share cost the plaintiff, was the gain or profit it made out of the transaction.

That is the whole story. If $78.48 be multiplied by 35, the number of shares or rights sold by the plaintiff, the product will be $2,746.80, and upon that it was properly taxable, and upon nothing more. It still retains 35 shares. When, if ever, they, or any of them, are sold, there must be returned as profit, in the year in which the price is received for them, the amount, if any, by which that price exceeds $430. It is, of course, immaterial that, if the plaintiff had chosen at the time it parted with the rights to the other 35, to sell any of those it still held, it would have made a taxable profit of nearly $80 a share upon those so disposed of. * * *

The case went to the Supreme Court under the style of *Miles* v. *Safe Deposit & Trust Co.*, 259 U. S. 247, and that court affirmed the decision of the lower court.

The Commissioner's computations are in harmony with this decision, and since no evidence was presented controverting in any way the correctness of the computations of the Commissioner, the amount of the loss as determined by him will not be disturbed.

In respect to the other question, the determination of the Commissioner is disapproved. Taxes paid at the source on tax-free covenant bonds are not additional income and should not be included as such. *Pitney* v. *Duffy*, 291 Fed. 621; 2 Fed. (2d) 230; certiorari denied, 267 U. S. 595.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*