Considered by TRUSSELL and SMITH.

---

BESSEMER INVESTMENT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5295.    Promulgated October 25, 1927.

1. A transaction in regard to stock of Standard Oil Co. of New York, held to have resulted in no profit to the petitioner.

2. The Commissioner's determination that certain transactions in regard to stock of New England Co. resulted in profitable sales by the petitioner approved for lack of evidence to the contrary.

3. The Commissioner's determination of the value for purposes of depreciation allowances of certain buildings of Henry Phipps Estates approved for lack of evidence of any other value.

4. Commissioner's determination of a gain from the sale of certain improved properties approved for lack of evidence.

*Bernhard Knollenberg, Esq.*, and *Charles C. Parlin, Esq.*, for the petitioner.

*J. Arthur Adams, Esq.*, for the respondent.

The Bessemer Investment Co. has petitioned for a redetermination of deficiencies in its income and profits taxes for the calendar years 1918 and 1919, in the respective amounts of $11,281.02 and $29,124.55. The former resulted from the rejection of a claim in abatement. That the petitioner is affiliated with Henry Phipps Estates and La Salle, Inc., is not disputed by either party.

The petitioner alleges that the Commissioner erred (1) in determining that income in the amount of $100,000 resulted from the purchase by the Bessemer Investment Co. of bonds of La Salle, Inc., at less than the amount at which they were issued; (2) in construing a transaction which took place in 1918 in regard to some stock of the Standard Oil Co. of New York, as a profitable sale by the Bessemer Investment Co., which transaction was in fact entered upon its books

by mistake; (3) in taking less than the fair market value of certain buildings of the Henry Phipps Estates in the computation of a deduction for 1918 and 1919 under section 234(a)(7) of the Revenue Act of 1918, thereby decreasing the deduction; (4) in reducing the amount of a deductible loss sustained by the Bessemer Investment Co. from the sale of securities in 1919, by allowing a loss of only $6,112.75 on the sale of some Kennicott Copper stock, when, as a matter of fact, the loss should have been $7,112.75; and by construing as a profitable sale of 1919, certain transactions of the Bessemer Investment Co. in regard to purchases and assignments of common stock of the New England Co., and (5) in determining that the Henry Phipps Estates realized a profit of $279,241.80 from the sale in 1919 of two parcels of improved real estate, whereas a deductible loss of $89,497.73 should have been allowed.

The respondent admitted at the hearing that the contention of the petitioner was correct in regard to his first allegation of error and in regard to the loss sustained upon the sale of the Kennicott Copper stock.

### FINDINGS OF FACT.

The Bessemer Investment Co. during 1918 and 1919 was a corporation organized under the laws of the State of New Jersey. Its principal office was in Hoboken, N. J.

. In his computation of a deductible loss of $1,509.84 sustained by the Bessemer Investment Co. from the sale of securities, the Commissioner included $14,448 as a profit from the sale of 100 shares of stock of the Standard Oil Co. of New York.

The Bessemer Investment Co. was advised by its brokers on May 24, 1918, that on the previous day 50 shares of Standard Oil Co. of New York stock had been purchased for its account for $13,753.13 and that this stock had been sold for $13,794.87. This transaction, which showed a profit of $41.74, was entered on the books of the Bessemer Investment Co. On May 31, 1918, the same brokers notified the company by letter that the previous report had been in error, that the stock had been purchased for another customer, and that the profit should be returned. The company thereupon repaid the profit by its check and made appropriate entries on its books to reverse the previous entries. During 1918, the Bessemer Investment Co. made no sale of Standard Oil of New York stock which resulted in any profit.

In his computation of a deductible loss of $59,197.35, sustained by the Bessemer Investment Co. in 1919, on account of the sale of securities, the Commissioner included $15,841.06 as a profit from the sale of 428.2 shares of New England Co. common stock.

On page 69 of Ledger No. 1 of the Bessemer Investment Co. there appears an account entitled "New England Co. Common Stock." The first entry under this account is dated June 30, 1915, and the last is dated July 1, 1919. Between these dates the account shows on various dates the debiting of numbers of shares of this stock at various prices, with a reference to the journal page in regard to each. It also shows the crediting on various dates of numbers of shares of this stock at various amounts, with a reference to the journal page in regard to each. Just above and to the right of the heading of this account there appear two pencil notations in the handwriting of a bookkeeper of the Bessemer Investment Co. who is still in its employ but who was not called as a witness. The first of these is as follows:

> Chace receives 25% of Purchases after
> Nov. 2nd 1917 up to 250 shs.

The second is as follows:

> See letter D. T. M. 7/30/17.
> We agree to carry for Mr. Moore
> $10,000 worth of stock
> 20% of purchases after July 30, 1917.

The chief accountant of the Bessemer Investment Co., who entered its employ about May 1, 1918, first noticed these pencil notations about January, 1919. This account contains, *inter alia*, the following credit entries:

| 1919 | | | |
|---|---|---|---|
| Jan. 1 | 235½ at 39.717 D. T. M. | J. 503 | $9,341.57 |
| | 192¼ at 35.89 M. G. C. | J. 503 | 6,900.77 |
| Feb. 27 | ¾ at 35.89 M. G. C. | J. 507 | 26.92 |

On the journal of the Bessemer Investment Co. at page 503, there appears the following:

| January, 1919 | Debits | Credits |
|---|---|---|
| 422 D. Thomas Moore: | | |
| 235½ shares N. Eng. Com. at 39.717 | $9,341.57 | |
| Interest to 1/1/1919 at 5% | 528.63 | |
| 446 Malcolm G. Chace: | | |
| 192¼ shares N. Eng. Com. at 35.89 | 6,900.77 | |
| Interest to 1/1/1919 at 5% | 364.68 | |
| 69 To New England Common: | | |
| 235½ shares at 39.717, being average cost of stock purchased by B. I. Co. Aug. 30th, 1917 to Feb. 1st, 1918 | | $9,341.57 |
| 192¼ shares at 35.89 being average cost of stock purchased by B. I. Co. Nov. 8th, 1917 to Feb. 1, 1918 | | 6,900.77 |
| 401 Interest Credit Ac.: | | |
| D. T. Moore | 528.63 | 893.31 |
| M. G. Chace | 364.68 | |

The two items of interest in the respective amounts of $528.63 and $364.68, were not paid during 1919.

In the same journal on page 507, under date of February 27, 1919, there is a debit to M. G. Chace of $26.92 and a credit to New England Co. common of $26.92, with the explanation " ¾ths share at $35.89 to adjust a fraction "; also a debit to dividends of $193 and a credit to Malcolm G. Chace of $193, with the explanation " 1% of 193 shares New England Company Common," and a further debit to dividends and a credit to D. Thomas Moore of $235.20, with the explanation " 1% of 235⅕ shares New England Company Common." The New England Co. common stock at page 69 of Ledger No. 1 of the Bessemer Investment Co. shows a debit on June 30, 1915, of 2,250 shares at $1 and another on November 1, 1915, of 1,027 shares at $1. Up to and including February 27, 1919, the credits to this account show the disposition of only 1,543.2 shares of this stock.

After November 2, 1917, and up to January 1, 1919, so far as this account shows, the Bessemer Investment Co. acquired 769 shares of New England Co. common stock at a total cost of $27,603.07, or at an average cost of $35.89 per share. After July 30, 1917, and up to January 1, 1919, so far as this account shows, the Bessemer Investment Co. acquired 1,176 shares of New England Co. common stock at a total cost of $46,707.84, or at an average cost of $39.717 per share.

It is a common practice of the Bessemer Investment Co. to purchase stock and securities for the accounts of others. The Standard Statistics Co. of New York, in their book of security prices quotes New England Co. common at 42, on December 30, 1918.

Henry Phipps Estates, Journal No. 1, page 6, under date of January 25, 1909, shows the following:

DEBITS

| | | |
|---|---|---|
| 45 West 17th St. Property A/C _____ L. 5 | 162, 000. |
| 44 " 18th " " " _____ L. 6 | 725, 000. |
| 13 " 21st " " " _____ L. 111 | 64, 000. |
| 6–14 " 22nd " " " _____ L. 111 | 487, 000. |
| 9th Ave. and 27th St. Property A/C _____ L. 7 | 170, 000. |
| 3 to 15 and 14 East 43rd St. " " _____ L. 8 | 595, 000. |
| 587–7th Ave. " " _____ L. 9 | 55, 000. |
| 1457–63 Broadway " " _____ L. 10 | 950, 000. |
| West 64th St. " " _____ L. 12 | 48, 000. |
| East 96th St. " " _____ L. 13 | 233, 000. |
| East 102nd St. " " _____ L. 14 | 205, 000. |

3, 694, 000

Properties acquired from Henry Phipps, in accordance with a resolution of Board of Directors passed at annual meeting January 12, 1909. Said properties being taken over at their tentative assessed valuation for 1909.

| | Debits | Credits |
|---|---|---|
| Notes payable (L. 15) | $326,000.00 | |
| Note of Henry Phipps Estates surrendered by Henry Phipps under arrangement governing transfer of above properties. (See H. P. Journal, folio 94.) | | |
| Rents receivable special (L. 132) | 3,277.94 | |
| Rents collectible on above properties. (See H. P. E. Vch. 134.) | | |
| To Henry Phipps (L. 3) | | $253,277.94 |
| Amount due H. P. under above arrangement. | | |
| To mortgage payable (L. 16) | | 400,000.00 |
| Mortgage on 1457–61 Broadway (Saranac Hotel Property) held by Equitable Life Assurance Society and assumed by H. P. Estates. | | |
| To surplus (L. 2) | | 3,370,000.00 |
| Being excess accruing to H. P. Estates due to acquisition of above properties and also sundry accounts; and the assumption of sundry liabilities as states. | | |
| Henry Phipps (L. 3) | 250,000.00 | |
| To capital stock (L. 1) | | 250,000.00 |
| To 2,500 shares (cft #5) at 100 issued in payment for sundry properties and accounts, as above, and in accordance with a resolution of Board of Directors passed at annual meeting held January 12, 1909. | | |

The journal of Henry Phipps under date of January, 1909, contains the following:

| DEBIT | | CREDIT | |
|---|---|---|---|
| Henry Phipps Estates | $4,911,553.74 | East 89th St. Apts | $131,886.63 |
| | | 96th St. Property | 375,779.31 |
| | | 43rd St. Property | 700,144.44 |
| | | 27th St. & 9th Ave | 215,771.07 |
| | | West 21st St. & 2d Ave | 678,146.96 |
| | | West 18th St., #44 | 1,021,325.75 |
| | | Saranac Hotel | 1,201,697.22 |
| | | West 17th St., #45 | 234,413.75 |
| | | 102nd St | 280,425.50 |
| | | West 64th St | 62,945.08 |

The following accounts appear in Henry Phipps' ledgers under the following headings:

*West 27th St. & 9th Ave., New York City*

| DEBITS | | | CREDITS | | |
|---|---|---|---|---|---|
| Dec. 22 | To hand money ($215,000) | $5,000.00 | Mar. 31, 1906 | By cash | $22.60 |
| Dec. 31 | Cash | 210,000.00 | May 23 | By Title Insurance refund | 168.75 |
| Dec. 31 | Accts. pay | 10.00 | Jan. 31, 1909 | By Henry Phipps Ests | 215,771.07 |
| Feb. 28, 1906 | | 1.75 | | | |
| Mar. 31 | | 726.50 | | | |
| Aug. 31 | | 224.17 | | | |
| | | 215,962.42 | | | 215,962.42 |

*8 East 48rd St.*

| DEBITS | | | CREDITS | | |
|---|---|---|---|---|---|
| July 22, 1903 | To W. S. Hawk | $50,000.00 | Aug. 1, 1907 | Bal. to new ledger Fol. 11 | $100,000.00 |
| Jan. 10, 1907 | do | 50,000.00 | | | |

*5 East 43rd St., New York*

| DEBITS | | | CREDITS | | |
|---|---|---|---|---|---|
| Mar. 5, 1902 | To cash | $72,500.00 | Apr. 24, 1902 | Bills receivable | $37,500.00 |
| Apr. 24, 1902 | Mercantile Trust Co | 2,500.00 | Aug. 1, 1907 | To bal. in new ledger | 75,271.74 |
| July 30, 1902 | W. S. Hawk | 135.87 | | | |
| Jan. 10, 1907 | do | 37,635.87 | | | |

*7 East 43rd St.*

| DEBITS | | | CREDITS | | |
|---|---|---|---|---|---|
| Mar. 5, 1902 | To cash | $72,500.00 | Apr. 19, 1902 | Bills receivable | $37,500.00 |
| Apr. 24, 1902 | Mercantile Trust Co | 2,500.00 | Aug. 1, 1907 | To balance in ledger Fol. 11 | 75,271.74 |
| July 30, 1902 | W. S. Hawk | 135.87 | | | |
| Jan. 10, 1907 | | 37,635.87 | | | |

## 9 East 43rd St.

| DEBITS | | CREDITS | |
|---|---|---|---|
| Oct. 31, 1902 | To accounts payable ---- $5,000 | Jan. 31 | By W. S. Hawk ---- $55,000 |
| Jan. 1, 1903 | do ---- 105,000 | Aug. 1, 1907 | To bal. new ledger Fol. 11 ---- 110,000 |
| Jan. 10, 1907 | W. S. Hawk ---- 55,000 | | |

## 11 East 43rd St.

| DEBITS | | CREDITS | |
|---|---|---|---|
| Jan. 24, 1902 | To Mercantile Trust Co. ---- $5,000.00 | Feb. 1902 | Bills receivable ---- $28,750.00 |
| Jan. 29, 1902 | do ---- 52,500.00 | Aug. 1, 1907 | To balance new ledger Fol. 11 ---- 67,626.67 |
| Apr. 24, 1902 | do ---- 126.67 | | |
| July 30, 1902 | W. S. Hawk ---- 5,000.00 | | |
| Jan. 10, 1907 | do ---- 33,750.00 | | |

## 13 East 43rd St.

| DEBITS | | CREDITS | |
|---|---|---|---|
| Feb. 28, 1903 | Accounts payable ---- $5,000.00 | Apr. 30, 1903 | Bills receivable ---- $62,500.00 |
| Apr. 30, 1903 | do ---- 120,000.00 | Aug. 1, 1907 | To bal. new ledger Fol. 11 ---- 125,000.00 |
| Jan. 10, 1907 | W. S. Hawk ---- 62,500.00 | | |

## 15 East 43rd St.

| DEBITS | | CREDITS | |
|---|---|---|---|
| May 19, 1902 | To cash ---- $72,500.00 | May 20, 1902 | Bills receivable ---- $37,500.00 |
| May 22 | do ---- 2,500.00 | Aug. 1, 1907 | To bal. new ledger Fol. 11 ---- 75,349.26 |
| July 30 | W. S. Hawk ---- 174.63 | | |
| Jan. 10, 1907 | do ---- 37,674.63 | | |

## 14 East 43rd St. New York

| DEBITS | | CREDITS | |
|---|---|---|---|
| Jan. 1, 1901 | Balance ---- $35,750.00 | Aug. 1, 1907 | Transfer to next ledger, page 11 ---- $71,625.03 |
| July 31 | W. S. Hawk ---- 62.51 | | |
| Jan. 10, 1907 | do ---- 75,852.00 | | |

*43rd Street, New York, Nos. 3, 5, 7, 9, 11, 13, 15 and 14*

| DEBITS | | CREDITS | |
|---|---|---|---|
| Aug. 1, 1907 To balance Folio 4 | $700,144.44 | Jan. 31, 1909 By Henry Phipps Est. stock | $700,144.44 |
| No. 3 | $100,000.00 | | |
| No. 5 | 75,271.74 | | |
| No. 7 | 75,271.74 | | |
| No. 9 | 110,000.00 | | |
| No. 11 | 67,626.67 | | |
| No. 13 | 125,000.00 | | |
| No. 15 | 75,349.26 | | |
| No. 14 | 71,625.03 | | |

*Nos. 3, 5 and 7, East 43rd Street*

| DEBITS | | CREDITS | |
|---|---|---|---|
| Oct. 30, 1909 Accounts payable | $9,513.96 | Oct. 1, 1910 Henry Phipps Estates stock Journal 207 | $201,992.92 |
| Nov. 30 | 12,321.82 | | |
| Dec. 30 09 | 452.12 | | |
| Jan. 1910 | 22,841.41 | | |
| Feb. 10 | 37,715.76 | | |
| Mar. 10 | 17,576.19 | | |
| April, 1910 | 33,852.95 | | |
| May 31 | 31,726.35 | | |
| June 30 | 13,485.33 | | |
| July 31 | 17,515.76 | | |
| July 31 | 1,130.29 | | |
| Aug. 31 | 3,860.96 | | |
| | 201,992.92 | | |

## 661 to 663 Fifth Avenue, New York

### DEBITS

| Date | Description | Ref | Amount |
|---|---|---|---|
| Apr. 21, 1911 | Hand money | | $50,000.00 |
| May 1 | Cash | | 658,500.00 |
| May 1 | Cash | | 276,500.00 |
| May 31 | Accts. Pay | | 967.38 |
| | | | 985,967.38 |

### CREDITS

| Date | Description | Amount |
|---|---|---|
| May 31, 1911 | By Henry Phipps Est. | $985,967.38 |

## West 17th and 18th Street, 45 West Seventeenth—42 West Eighteenth

### DEBITS

| Date | Description | Ref | Amount |
|---|---|---|---|
| Dec. 18, 1906 | Hand Money (cost 122,500) | 603 | $10,000.00 |
| Apr. 3, 1907 | Cash | 645 | 112,500.00 |
| " 30, | To accounts payable | J. 314 | 478.00 |
| May 31, | " " | J. 318 | 2,250.00 |
| June 29, | " " | J. 326 | 1,608.00 |
| July 31, | " " | J. 331 | 1.75 |
| Oct. 31, | A/c Payable | J. 12 | 19,248.67 |
| Nov. 30, | " " | J. 18 | 14,561.85 |
| Dec. 31, | " " | J. 26 | 17,530.81 |
| Feb. 29, 1908 | Pitts. Bldg. Co | J. 37 | 30,843.48 |
| Mar. 29, | A/c payable | J. 42 | 5,954.04 |
| " 31, | " " | J. 47 | 8,582.56 |
| Apr. 30, | " " | J. 47 | 7,220.31 |
| May 29, | " " | J. 54 | 2,034.00 |
| June 30, | " " | J. 60 | 2,291.18 |
| | | | 235,104.65 |

### CREDITS

| Date | Description | Ref | Amount |
|---|---|---|---|
| May 3, 1907 | Title G. & T. Co | 654 | $114.06 |
| " 10, " | Wrecking | 656 | 275.00 |
| July 20, 1908 | By cash | 126 | 258.70 |
| Apr. 10, " | Cash | 146 | 43.14 |
| Jan. 31, 1909 | H. P. Estates Stock | J. 97 | 234,413.75 |
| | | | 235,104.65 |

*Convent Property—17th and 18th Streets, 37/51 West 17th—44/48 West 18th Sts., New York City*

| DEBITS | | | | | CREDITS | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Dec. | 7, 1905 | Hand money (335) | 449 | $10,000.00 | Jan. | 19, 1906 | Wrecking | J. 464 | $3,620.00 |
| " | 31, " | Cash | 459 | 325,000.00 | Feb. | 7, " | Robts. Till. Ins | 478 | 123.43 |
| Jan. | 31, 1906 | " A/c pay | J. 230 | 556.44 | July | 20, 1907 | Un. Merc. Realty Co | J. 238 | 100.00 |
| Apr. | 30, " | " " | J. 245 | 5,000.00 | May | 10, " | Insurance | 658 | 337.65 |
| June | 30, " | " " | J. 256 | 19,713.41 | Apr. | 25, 1908 | By Fire Loss Insurance | 94 | 250.00 |
| July | 31, " | " " | J. 261 | 412.11 | Aug. | 22, " | Pittsburgh Bldg. Co | 156 | 7,159.01 |
| Aug. | 31, " | " " | J. 265 | 11,955.28 | Jan. | 31, " | H. P. Estate Stock | J. 97 | 1,021,325.78 |
| Sept. | 30, " | " " | J. 271 | 59,057.98 | | | | | |
| Oct. | 31, " | " " | J. 279 | 58,063.56 | | | | | |
| Nov. | 30, " | " " | J. 284 | 109,266.76 | | | | | |
| Dec. | 31, " | " " | J. 290 | 76,898.63 | | | | | |
| Jan. | 31, 1907 | " " | J. 299 | 24,287.44 | | | | | |
| Feb. | 28, " | " " | J. 305 | 112,580.37 | | | | | |
| Mch. | 31, " | " " | J. 309 | 71,866.71 | | | | | |
| Apr. | 30, " | " " | J. 314 | 21,693.44 | | | | | |
| May | 31, " | " " | J. 318 | 61,410.42 | | | | | |
| June | 29, " | " " | J. 326 | 48,000.00 | | | | | |
| Aug. | 31, " | Un. Mor. R. Co | J. 4 | 2,408.32 | | | | | |
| Sept. | 20, " | A/c payable | J. 6 | 100.00 | | | | | |
| Oct. | 31, " | " " | J. 12 | 13,905.56 | | | | | |
| Dec. | 31, " | " " | J. 26 | 310.64 | | | | | |
| May | 29, 1909 | " " | J. 54 | 273.00 | | | | | |
| Jan. | 31, " | " I. R. C | J. 97 | 156.00 | | | | | |
| | | | | 1,032,915.87 | | | | | 1,032,915.87 |

The property described as 661 to 663 Fifth Avenue was set up on the books of Henry Phipps Estates at a value of $645,000.

For the purposes of taxation in the State of New York, the properties known as No. 44 West 18th Street and No. 45 West 17th Street were assessed as follows:

| Year | Value of real estate unimproved | Value of real estate with improvements | Year | Value of real estate unimproved | Value of real estate with improvements |
|---|---|---|---|---|---|
| 44 West 18th Street: | | | 45 West 17th Street: | | |
| 1909 | $340,000 | $725,000 | 1909 | $107,000 | $162,000 |
| 1913 | 340,000 | 770,000 | 1913 | 107,000 | 162,000 |
| 1919 | 205,000 | 590,000 | 1919 | 68,000 | 106,000 |

In a ledger of Henry Phipps Estates reserves for depreciation have been set up for the building at 45 West 17th Street, for the period from the date of acquisition to March 1, 1913, in the amount of $4,704.76, and for the building at 44 West 18th Street for the same period in the amount of $27,971.67; for the period from March 1, 1913, to December 31, 1917, for both buildings in the amount of $114,376.45; for 1917 for the former building in the amount of $3,387.39 and for the other building in the amount of $20,139.75; for 1918, the same amount; for 11 months of 1919 for the first building in the amount of $3,105.11 and for the other building in the amount of $18,469.77.

The Commissioner arrived at a profit from the sale of these two properties by taking the cost as shown on the corporation's books as follows:

| | | |
|---|---|---|
| 45 W. 17th St | $162,000 | |
| 44 W. 18th St | 725,000 | |
| | | $887,000 |
| Less the following deductions: | | |
|     Depreciation to date of sale | | |
|     1909 to 1915, 44 W. 18th St | 46,992.75 | |
|     1909 to 1915, 45 W. 17th St | 7,903.91 | |
|     1916 depreciation " | 3,387.39 | |
|     " 44 W. 18th St | 20,139.75 | |
|     Total depreciation taken to Dec. 31, 1916 | 78,423.80 | |
| Depreciation allowed for tax purposes, 1917 | 20,250.00 | |
|    " " " " " 1918 | 14,859.00 | |
|    " " " " " 1919 | 14,859.00 | |
|     Total depreciation to be deducted from cost | | 128,391.80 |
| Cost less depreciation | | 758,608.20 |
| Sales price | 1,050,000 | |
| Less Commission of $11,100 | | |
| Documentary stamps 1,050 | | |
| | 12,150 | |
| | | 1,037,850.00 |
| Net profit for tax purposes | | 279,241.80 |

Shares of stock in the Henry Phipps Estates were issued and canceled as follows:

| Issued | | | Canceled |
|---|---|---|---|
| May 23, 1906 | 98 shares to Henry Phipps | June 20, 1911 |
| Do | 1 share to John S. Phipps | Do |
| Do | — shares to George E. Gordon | Do |
| Dec. 27, 1906 | 2400 shares to Henry Phipps | Do |
| Jan. 25, 1909 | 2500 shares to Henry Phipps | Do |
| June 20, 1911 | 4977 shares to Bessemer Inv. Co | Dec. 20, 1924 |
| Do | 3 shares to Bessemer Inv. Co | June 20, 1911 |
| Do | 1 share to Henry Phipps | later |
| Jan. 9, 1917 | 1 share to Henry Phipps | Dec. 20, 1924 |
| Jan. 10, 1919 | 1 share to David P. Layman, Jr. | Do |
| Sept. 28, 1919 | 1 share to D. T. Moore | Do |
| Dec. 20, 1924 | 5000 shares to Phipps Realty Co | Do |
| No others. | | |

## OPINION.

MURDOCK: The respondent has not contested the jurisdiction of the Board in this case, and has determined that the three companies were affiliated during the taxable years. We assume that for each year the facts give rise to a deficiency as defined by the statute. He has admitted that he erroneously added a profit of $100,000 to the income of the Bessemer Investment Co. for 1919, on account of the purchase by it of bonds of La Salle, Inc., an affiliated company. He further admitted an error of $1,000 in computing the loss sustained by the Bessemer Investment Co. on the sale of some stock of the Kennicott Copper Co. Both of these mistakes will be corrected upon a recomputation of the petitioner's tax liability.

The Commissioner also erred when he determined a profit from the transaction in regard to the stock of the Standard Oil Co. of New York. Apparently he considered that the entries on the books of the Bessemer Investment Co. showed the sale of 100 shares of this stock and as the company was holding shares of this stock which it had purchased at an earlier date at a lower price, the Commissioner subtracted the purchase price from the sale price and determined that the difference was a profit. We are satisfied from the evidence that the Bessemer Investment Co. did not sell any of this stock in the year 1918, and that the Commissioner's determination was based upon a misunderstanding of two entries in the petitioner's books, one of which was entered by mistake and the other of which was entered intentionally to correct the mistake.

The evidence leaves us in considerable doubt in regard to the transactions in New England Co. common stock as shown by the petitioner's books and we hold that the presumption of the correctness of the Commissioner's determination has not been overcome. The petitioner contends that it had an agreement with Malcolm G. Chace

whereby 25 per cent of the purchases of New England Co. common stock made by it after November 2, 1917, up to 250 shares were to be purchased, not for itself, but for and on account of Mr. Chace; that thereafter it purchased 192¼ shares for Mr. Chace at an average price of $35.89; that it transferred these shares to Mr. Chace on January 1, 1919, at $35.89; and that no gain resulted on account of this transaction. It further contends that it had an agreement with Mr. Moore whereby 20 per cent of its purchases of New England Co. common stock after July 30, 1917, up to $10,000 were purchased, not for itself, but for Mr. Moore; that on January 1, 1919, it transferred 235⅕ shares at $39.717 to Mr. Moore; that it was merely complying with its agreement, and no profit resulted to it.

The ledger and journal of the Bessemer Investment Co. show no facts which are inconsistent with this contention, but on the other hand the book entries, the only evidence before us on this issue, are inferential only and do not prove facts which are inconsistent with the contention of the Commissioner that there was a sale in 1919. No one has testified that the Bessemer Investment Co. or anyone acting for it had such an agreement with Mr. Chace or with Mr. Moore. No one testified that either of these men ever entered into the agreements or ratified any acts of the Bessemer Investment Co. Were these alleged agreements written or oral? When were they made and by whom? We have in evidence a pencil notation on the Bessemer Investment Co.'s ledger. We know that it was made by the bookkeeper of the Bessemer Investment Co., but we do not know when, why, or by virtue of what authority he made it. The pencil notation of the alleged agreement with Mr. Moore refers to a letter dated July 30, 1917, in regard to which we have the testimony of one witness only, who says that he made a search for this letter in the files of the Bessemer Investment Co., but was unable to find it, and that apparently he did not apply to D. T. Moore for a copy of the letter and that an unsuccessful attempt was made to get testimony from Mr. Moore with reference to the transaction. It further appears that the bookkeeper who made the pencil notations on the ledger was still in the employ of the Bessemer Investment Co. at the time of the hearing, but was not called as a witness. The facts relative to the agreements, if any, which the Bessemer Investment Co. had with these two men were peculiarly within its knowledge and were not as readily available to the respondent as they were to the petitioner. Under such circumstances we do not feel that the petitioner has sustained the burden of proof which was upon it to overcome the presumption of the correctness of the Commissioner's determination.

Henry Phipps Estates during 1918 and 1919 held the following pieces of real property situated in the City of New York:

Nos. 3, 5, 7, 9, 11, 13, 15 and 14 East 43rd Street, West 27th Street and 9th Avenue, and 661 to 663 Fifth Avenue.

One of these properties, called West 27th Street and 9th Avenue, was acquired from Henry Phipps on January 31, 1909, and was entered on the books of Henry Phipps Estates at a value of $170,000. The Commissioner allocated a portion of this value to the land and used the remainder as the cost or value of the improvements in computing what he determined was a proper deduction under section 234(a) (7) of the Revenue Act of 1918 for each of the years 1918 and 1919. His treatment of the other properties was similar to his action in regard to this one.

The petitioner does not object to the ratio used in the allocation of portions of the total value to land and to improvements, nor does it object to the rate of depreciation used by the Commissioner. But it contends that the basis or starting figure should have been $215,-771.07 instead of $170,000, because the former represents the cost as shown by the books of Henry Phipps, the previous owner, whereas the latter represents merely the tentative (later made final) assessed valuation of the property for 1909, in the City of New York.

Assuming only for the purpose of this discussion that the books of Henry Phipps showed the cost as contended, we are unable to understand how this proves error on the part of the Commissioner. The latter determined the cost of these properties to the petitioner. We are to say whether he has determined the correct cost to the petitioner. The fact that Henry Phipps acquired this West 27th Street and 9th Avenue property in December, 1905, for $215,771.07 and transferred it to the corporation on January 31, 1909, in exchange for the latter's stock of the total par value of $215,771.07, standing alone, can not in our opinion overcome the presumption that the Commissioner has correctly determined that the cost of the property to the petitioner was $170,000. See *Appeal of Kinsman Transit Co.*, 1 B. T. A. 552. Especially is this true in view of the other facts which appear in this case.

The acquisition by Phipps of the properties on East 43rd Street antedated the transfer of these properties to the corporation by six or seven years instead of by only three years, as in the case of the above property. So their cost to Phipps is of even less importance in determining that their value when transferred to the corporation was greater than that allowed by the Commissioner.

On January 31, 1909, Phipps was already the owner of all but probably two qualifying shares of the stock of the corporation and the transfers of that date doubled his stockholdings in this corporation without otherwise changing the stock ownership. We do not

know the market value of a share of this stock at the date of the transfer. Furthermore it is apparent from the petitioner's evidence that Phipps did not, as contended, receive stock of a total par value of $215,771.07 for the West 27th Street and 9th Avenue property and of $700,144.44 for the East 43rd Street property, inasmuch as he only received 2,500 shares of a total par value of $250,000 in exchange for properties which, if we again assume that his books show the cost, cost $4,911,553.74. See his journal entry as set out in our findings of fact.

We are not certain that from the evidence we can determine what took place on January 31, 1909. The resolution of the board of directors of the corporation, passed on January 12, 1909, is not before us. But it seems that Phipps transferred to the corporation 10 properties, a note of the corporation in the amount of $326,000 held by him, and rents receivable. The corporation assumed a mortgage of $400,000 on the properties and issued 2,500 shares of stock to Phipps. The market value of the note for $326,000 and the market value of the stock are unknown. How can we determine either the cost of the properties to the corporation or the market value of the properties on January 31, 1909?

In addition to the difficulties already mentioned we can not assume that the entries from the books of Henry Phipps show the cost of this property. We have no information as to who kept these books. We have no proof of that person's experience, ability or judgment as an accountant. We do not know that he properly separated current expenses from capital items. The entries are not self-explanatory and no one has explained them. The mere fact that some person who is unknown to us has set down a number of debits and has subtracted a number of credits does not disclose the cost of a property. This is even more apparent in connection with the other properties involved in this appeal than with the West 27th Street and 9th Avenue property, since in this one the principal debits are explained as hand money and cash, whereas in some of the others there are large amounts entirely unexplained, or explained merely as accounts payable. These book entries have too many inherent uncertainties and require too many assumptions on our part to be given much weight in the evidence. And even if given weight they would prove only cost to Phipps, a fact with which we are not primarily concerned.

It appears that the property known as 661–663 Fifth Avenue, New York, was not acquired in 1909, as alleged, but was acquired. if at all, in 1911, under circumstances which are not disclosed by the evidence. The entries on Phipps' books which refer to this property would seem to show that he acquired it only about a month before he transferred it to the corporation. But inasmuch as we

are left completely in the dark as to any other fact except that the property was set up on the books of the corporation at a value of $645,000, which value was used by the Commissioner, we can not see why we should say that the Commissioner was in error and should have used a value or cost of $985,967.38.

The danger of taking unexplained book entries as evidence of cost is exemplified in this very case. The petition alleges and some of the entries seem to show that all of the properties referred to as Nos. 3, 5, 7, 9, 11, 13, 14, and 15 East 43rd Street were transferred by Phipps to the corporation on January 31, 1909. The petition alleges that these properties had cost Phipps $902,137.36; that he transferred them at this figure to the corporation for stock in 1909, and that the corporation entered them on its books at $595,000, which figure the Commissioner used. And yet other book entries in Phipps' books offered by the petitioner indicate that Nos. 3, 5, and 7 East 43rd Street, New York, were still carried on Phipps' books until October 1, 1910, at which date they were transferred to the corporation and the account balanced by a credit of Henry Phipps Estates stock in the amount of $201,992.92. And it further appears that on January 31, 1909, a credit of Henry Phipps Estates stock in the amount of only $700,144.44 was entered to the property No. 14 and Nos. 3 to 15 East 43rd Street, New York. It has not been explained how property which after January 31, 1909, belonged to the corporation was still adding to its cost on the books of an individual.

We must have some proof that either the cost of these properties to the corporation on January 31, 1909, the fair market value of the properties on that date, or their fair market value on March 1, 1913, was something different from the figure used by the Commissioner and such proof must be sufficiently convincing to overcome a presumption in favor of the Commissioner's determination. Such proof is not before us and therefore on the third allegation of error as above set forth we affirm the Commissioner.

The petitioner's final contention is that Henry Phipps Estates suffered a loss of $89,497.73 in 1919, when it sold two pieces of improved real estate, each fronting on both 17th and 18th Streets, in New York City—one known as No. 45 West 17th Street, and the other known as No. 44 West 18th Street. It acquired these from Henry Phipps on January 31, 1909, in the same transaction in which it acquired the other properties mentioned above in our discussion of another issue in this case. We have set forth in detail in our findings the method used by the Commissioner in determining that the corporation realized a profit of $279,241.80 from the sale of these two properties.

If we are to determine this issue other than by affirming the Commissioner, we must know the relation of cost (to the seller) to fair

market value on March 1, 1913, and we must know the amount of that one of these two figures which forms the basis of the computation of gain or loss. Fair market value at the date of acquisition might be material also, under certain circumstances.

The petitioner's evidence consists of: (1) book entries, similar in all essentials to the ones we have just discussed in connection with another of the petitioner's contentions; (2) the assessed values of these two properties for tax purposes in the City of New York, in 1909, 1913, and 1919; and (3) the testimony of a witness who supervised the preparation of an appraisal which was admitted in evidence over the objection of the respondent's counsel.

The book entries can have no more weight to overcome the presumption of the correctness of the Commissioner's determination on this point than they had to overcome a similar presumption in the other issue. Our remarks as to those entries in our discussion of that other issue apply with like force here. We are concerned with cost to the petitioner or March 1, 1913, fair market value, and cost to one who previously owned the property for several years, even if proven, is not of itself determinative of this issue.

We know the assessed values of these properties for the purposes of taxation in New York City. But no one has related those assessed values to cost or fair market values on January 31, 1909, or March 1, 1913, and yet it is a well known fact that assessed values are not necessarily indicative of fair market values. See *Pitney* v. *Duffy*, 291 Fed. 621; *Appeal of American Express Co.*, 2 B. T. A. 498; *Appeal of William A. Daly, Administrator*, 1 B. T. A. 993; and *Dorr* v. *Massachusetts Title Insurance Co.*, 238 Mass. 490; 131 N. E. 191.

The petitioner called as a witness an experienced appraiser, the vice president of an appraisal company. He said he had been engaged for many years in making appraisals of land, buildings, and equipment of industrial and other concerns in New York and elsewhere in the United States. He said that he was familiar with building and construction values in New York since 1909. In December, 1925, he made a physical examination of the two properties with which we are here concerned. He told how his company had been called upon to appraise these properties and how the appraisal had been made by himself and three others under his personal direction. He then gave his opinion, based upon this appraisal, that the two properties had a fair market value on January 31, 1909, of $1,300,000 and on March 1, 1913, of $1,250,000, although the report showed a March 1, 1913, value of only $1,234,681.30.

This man's testimony and the appraisal which he prepared might be very valuable for some purposes, but as offered in this case they have but slight weight in the evidence. If the witness was familiar

with land values in New York either in the years 1909 or 1913, or as of 1909 or 1913, the extent of his familiarity was not shown. So far as we know he saw the properties for the first time in December, 1925. It was not shown that the properties as they then existed were substantially the same as they were in 1909, 1913, or 1919, allowance being made for the changes due to passage of time and use. The witness accepted the Phipps' books as proof of facts, whereas we have declined to accept them as proof of those facts. The appraisal report discloses that for evidence of land values it relies upon inquiries and not upon the opinion of any of the appraisers. It also discloses that many material facts not known to the appraisers were approximated. It appears that this report purports merely to check the cost of the properties to Phipps as shown by his books and to give an estimated reproduction cost of the buildings as of March 1, 1913, plus the cost of the land to Phipps. Fair market values were arrived at mathematically by deducting depreciation from the estimated cost to Phipps.

We have discussed similar appraisals heretofore in many cases. See, for example, *Appeal of Rockford Malleable Iron Works*, 2 B. T. A. 817; *Appeal of Tibby-Brawner Glass Co.*, 2 B. T. A. 918; and *Appeal of Carrie W. Meinhard*, 3 B. T. A. 612. This particular appraisal is of no assistance to us in deciding whether there was a profit or a loss to the petitioner on the sale of this real estate. The opinion of the witness is no more convincing than his report on which his opinion was based. His estimate of the life of the buildings, if different from the Commissioner's, is of no value until we know that he was considering substantially the same buildings as existed in 1909 or 1913.

The respondent offered no evidence other than the admitted fact that he took the value or cost of these properties as shown by the corporation's books as the basis for his calculation. In every case before us there is a presumption that the determination of the Commissioner is correct. This presumption may be overcome by proof, and where the method of arriving at his determination is unexplained or appears to be an arbitrary, improper or unreasonable method, the presumption may be overcome by very slight proof. But in any case there must be proof of some fact which tends to show the incorrectness of the Commissioner's determination. In this case on this issue we have searched in vain for proof of any such fact and therefore affirm the Commissioner.

> *Judgment will be entered on notice of 15 days, under Rule 50.*

Considered by TRAMMELL, MORRIS, and SIEFKIN.