In the Matter of the Transfer Tax upon the Estate of Laura S. Rockefeller, Deceased.

The Comptroller of the State of New York, Appellant; Rockefeller Foundation and Others, Respondents.

First Department, May 18, 1917.

Tax — appeal — jurisdiction of surrogate on appeal from order of transfer tax appraiser — exemption of transfers to charitable and benevolent corporations — when corporation charitable and benevolent within meaning of statute — gift not in contemplation of death.

On an appeal to the surrogate from an order of a transfer tax appraiser, evidence as to the payment of sums by the executors to various beneficiaries cannot be considered, where such questions were not raised before the appraiser and are not specified in the notice of appeal.

The legal effect of a transfer to a charitable corporation which was made and took effect in possession and enjoyment in the lifetime of the donor, and the capacity of said corporation to hold and administer the trust is not within the jurisdiction of the surrogate upon an appeal from an order of a transfer tax appraiser.

Such a transfer not having been made in contemplation of death is not taxable under section 220, subdivision 4, of the Tax Law.

The Rockefeller Foundation, incorporated by Laws of 1913, chapter 488, "for the purpose of receiving and maintaining a fund or funds and applying the income and principal thereof to promote the well-being of mankind throughout the world," no officer, member or employee of which receives or is entitled to receive any pecuniary profit from its operations, except reasonable compensation for services performed, is a charitable corporation, and, hence, exempt from the tax upon transfers of property to it by section 221 of the Tax Law.

The Bureau of Social Hygiene, organized under the Membership Corporations Law for the "study, amelioration and prevention of those social conditions, crimes and diseases which adversely affect the well being of society, with special reference to prostitution and the evils associated therewith," is also exempt from the tax upon transfers of property to it by said section of the Tax Law.

The character of a corporation must be determined by its charter.

The fact that some of the funds of a corporation have been used by it for uses foreign to its corporate powers or that it has exceeded its corporate powers in assuming to act as trustee for other charities, does not affect its status as a charitable and benevolent corporation unless such acts were for the purpose of the personal enrichment of its officers or members. Such matters are not within the jurisdiction of the surrogate, nor do they properly arise in a transfer tax proceeding.

APPEAL by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of New York entered in the office of said Surrogate's Court on the 13th day of September, 1916, affirming an order confirming the report of the appraiser herein assessing the transfer tax upon this estate.

*Schuyler C. Carlton*, for the appellant, the Comptroller of the State of New York.

*George Welwood Murray* [*William R. Conklin* with him on the brief], for the respondents John D. Rockefeller and others.

PAGE, J.:

Laura S. Rockefeller died on the 12th day of March, 1915, leaving a will which was duly admitted to probate. The 16th clause of the will provided: "All the rest, residue and remainder of my property of every description, real, personal and mixed, and wheresoever situated, I give, devise and bequeath to my said executors who shall qualify and their successors and successor, in trust, for charitable uses as follows:" (naming one

educational and five religious corporations, and continues:) "Bureau of Social Hygiene, if the same shall at the time of such distribution be incorporated and capable of receiving a devise or bequest under this will. The said trustees may give to each of said institutions so much of the property as they shall see fit, and shall have the right to exclude any one or more of said institutions absolutely. They shall have the power to specify as to each institution to which the property shall be given, whether it shall be used for current expenses, for buildings, for endowment, or for any other of the charitable corporate purposes of said institution. Any portion of the fund which shall not be used for the foregoing objects the said trustees may apply to such charitable corporations as they may select, and in such sums, respectively, as they may deem proper." By affidavit of one of the executors, presented to the appraiser, it appeared that the following distribution had been made, pursuant to the said clause of the will, by determination of the executors: Women's American Baptist Home Mission Society of Chicago, Ill., $100,000; Women's American Baptist Foreign Mission Society of Boston, Mass., $300,000; Bureau of Social Hygiene, New York city, $75,000; Rockefeller Foundation, New York city, $438,593.12.

On the hearing of the appeal before the surrogate the fact of the payment of these sums by the executors to the various beneficiaries was stipulated. Objection to the reception of the fact was made by the State Comptroller. The Comptroller offered certain evidence to which objection was made by the attorneys for the executors and the surrogate expressed doubt as to his power to consider the evidence, upon the ground that it was no part of the record before the appraiser.

In our opinion he did not have power to consider the evidence. The statute requires the notice of appeal "shall state the grounds upon which the appeal is taken" (Tax Law, [Consol. Laws, chap. 60; Laws of 1909, chap. 62], § 232, derived from Laws of 1892, chap. 399, § 13, as amd. by Laws of 1895, chap. 556, and revised by former Tax Law [Gen. Laws, chap. 24; Laws of 1896, chap. 908], § 232, as amd. by Laws of 1908, chap. 310, and prior statutes), and none but those specified can be considered. (*Matter of Davis*, 149 N. Y. 539,

548; *Matter of Manning*, 169 id. 449, 451.) In the event of new facts arising after the notice of appeal was filed it has been held that "the statute ought to be construed so as to permit the raising upon an appeal, of a question which did not enter into the original determination and which was first made known after the appeal had been taken." (*Matter of Westurn*, 152 N. Y. 93, 104.) We will not, therefore, consider the very interesting questions discussed in the brief of the appellant, that until payment was actually made by the executors to the beneficiaries, the property either passed to the next of kin, subject to be divested by the exercise of the power, or that it remains in the trustee and is subject to the tax. These questions were not raised before the appraiser and are not specified in the notice of appeal. If the questions had been raised before the appraiser, the fact of payment could have been proved.

The questions that have been properly raised and are before us for determination are whether the Rockefeller Foundation and the Bureau of Social Hygiene are corporations of such character that they are exempted from the tax upon transfer of property to them by section 221 of the Tax Law (as amd. by Laws of 1913, chap. 795);* also whether the $48,000 in bonds given to the Rockefeller Foundation by Mrs. Rockefeller in her lifetime are subject to tax in this proceeding. It is claimed by the State Comptroller that the transfer of the $48,000 in bonds to the Rockefeller Foundation was void, *first,* because a charitable corporation cannot act as trustee for another charitable corporation where the first corporation has no interest in the property; *second,* for the reason that the trust would be void as a perpetuity. However this may be, we do not express any opinion upon those propositions as they do not arise in this proceeding. The transfer was made and took effect in possession and enjoyment in the lifetime of the donor, and was not made in contemplation of death, and hence not taxable under section 220, subdivision 4, of the Tax Law (as amd. by Laws of 1911, chap. 732).† The legal effect of that transfer and the capacity of the Rockefeller Foundation to hold and administer

---

* Since amd. by Laws of 1916, chap. 548.—[REP.

† Since amd. by Laws of 1915, chap. 664, and Laws of 1916, chap. 323.—[REP.

the trust is not within the jurisdiction of the Surrogate's Court to determine.

The Rockefeller Foundation was incorporated by a special act of the Legislature (Laws of 1913, chap. 488) "for the purpose of receiving and maintaining a fund or funds and applying the income and principal thereof to promote the well-being of mankind throughout the world. It shall be within the purposes of said corporation to use as means to that end research, publication, the establishment and maintenance of charitable, benevolent, religious, missionary, and public educational activities, agencies and institutions, and the aid of any such activities agencies and institutions already established, and any other means and agencies which from time to time shall seem expedient to its members or trustees." Section 3 of said act provides: "No officer, member or employee of this corporation shall receive or be lawfully entitled to receive any pecuniary profit from the operations thereof except reasonable compensation for services in effecting one or more of its purposes, or as a proper beneficiary of its strictly charitable purposes." Upon the hearing before the appraiser the Rockefeller Foundation claimed that the legacy to it was exempt from taxation, and put in evidence its charter, and an affidavit of its secretary, "That ever since the corporation was organized, and up to the present time, said corporation has been engaged exclusively in carrying out its strictly charitable and benevolent purposes. * * * That no officer, member or manager of said corporation receives or has received any pecuniary profit from the operations thereof. That the only persons * * * who now receive or who have received any compensation or pecuniary profit whatsoever from the operations thereof are hired assistants and clerks who receive reasonable compensation for the services performed by them for said corporation."

It is well settled that the character of a corporation must be determined by its charter. (*Matter of White,* 118 App. Div. 869; *Matter of Mergentime,* 129 id. 367, 374; affd., 195 N. Y. 572; *Matter of Loeb,* 167 App. Div. 588, 589; *Matter of De Peyster,* 210 N. Y. 216, 219.)

The character of this corporation is shown from its purposes as stated in its charter (§ 1): "For the purpose of receiving

and maintaining a fund or funds and applying the income and principal thereof to promote the well-being of mankind throughout the world." What follows relates to the means of accomplishing that purpose. The test of a charitable gift or use and a charitable corporation are the same. (*Matter of Altman*, 87 Misc. Rep. 255, 260.) The former has been thus defined: "a charitable use, where neither law nor public policy forbids, may be applied to almost any thing that tends to promote the well-doing and well-being of social man." (*Ould* v. *Washington Hospital, etc.*, 95 U. S. 303, 311; *Tilden* v. *Green*, 130 N. Y. 29, 46.) Our Court of Appeals has recently said: "Many definitions of a charitable trust have been formulated, but all the definitions that have been attempted carry the implication of public utility in its purpose. * * * If the purpose to be attained is personal, private or selfish, it is not a charitable trust. When the purpose accomplished is that of public usefulness, unstained by personal, private or selfish considerations, its charitable character insures its validity." (*Matter of MacDowell*, 217 N. Y. 454, 460.) In its popular acceptation a charitable corporation is one that freely and voluntarily ministers to the physical needs of those pecuniarily unable to secure for themselves, while a benevolent corporation is one that ministers to all, and the purpose may be anything that promotes the mental, physical or spiritual welfare of man. Considered in the light of the legal definitions above set forth the Rockefeller Foundation is a charitable corporation, while considered in the popular meaning of the words it is both charitable and benevolent in its purposes.

If, as claimed by the Comptroller, some of the funds of the corporation have been used by it for uses foreign to its corporate powers, or if it has exceeded its corporate powers in assuming to act as trustee for other charities, this would not affect its status as a charitable and benevolent corporation unless these uses were for the purpose of the personal enrichment of its officers or members. If these acts were *ultra vires*, on a proper application by the Attorney-General, the power of the Supreme Court over such corporation could be invoked, and the trustees called upon to account. But such matters are not within the jurisdiction of the Surrogate's Court, nor do they properly arise in a transfer tax proceeding.

Applying the same tests to the Bureau of Social Hygiene demonstrates it to be within the excepted class of corporations. It was organized under the Membership Corporations Law (Consol. Laws, chap. 35; Laws of 1909, chap. 40), and the purposes of its existence are thus stated in the certificate of incorporation: "The particular objects for which the corporation is formed are the study, amelioration and prevention of those social conditions, crimes and diseases which adversely affect the well being of society, with special reference to prostitution and the evils associated therewith." Then follows a statement of the means to be adopted to make effective its purpose. Nowhere does it appear that its object or the means adopted are for the pecuniary advantage of its members or officers. Its purposes as expressed are benevolent and charitable. In the charter of the Rockefeller Foundation it is expressly provided that no officer, member or employee shall receive or be lawfully entitled to receive any pecuniary profit from its operations except reasonable compensation for services rendered.

The Membership Corporations Law (§ 2)* excludes a corporation organized for pecuniary profit from the right to incorporate under its provisions. Furthermore it appeared from the affidavits submitted to the appraiser that in the case of both of these corporations, no such pecuniary profit had been obtained except a reasonable return for services rendered in carrying into effect their objects. Both corporations were, therefore, exempt from a tax upon the transfer of the property bequeathed by the will of Laura S. Rockefeller.

It has been the settled policy of the State of New York to encourage the benevolently inclined to dedicate a portion of their property to charitable and benevolent purposes for the relief of the sick or distressed, the amelioration of the condition of the unfortunate or the advancement of the physical, mental or spiritual wellbeing of its inhabitants, and to that end to free the property thus dedicated, so long as it shall be used for those purposes, from taxation. The Transfer Tax Law, in harmony with this general purpose, has provided that bequests, devises

* Since amd. by Laws of 1914, chap. 167.— [REP.

and gifts to take effect after the death of the testator or donor shall not be diminished by a tax upon the transfer to the charitable or benevolent corporation.

The decision of the learned surrogate was right and the order should be affirmed, with costs.

CLARKE, P. J., SCOTT, SMITH and DAVIS, JJ., concurred.

Order affirmed, with costs.