Commonwealth *v.* McDermott, Appellant.

Commonwealth *v.* Levy et al., Appellants.

Argued February 5, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Wm. F. Berkowitz,* for appellants.—The Act of 1925 involves wrongful classification: Ayar's App., 122 Pa. 266; Com. v. Young, 248 Pa. 458; Blankenburg v. Black, 200 Pa. 629; Wood v. Phila., 46 Pa. Superior Ct. 573; White's App., 287 Pa. 259; Com. v. Humphrey, 288 Pa. 280.

*Thaddeus M. Daly, Jr.,* Assistant District Attorney, with him *John Monaghan,* District Attorney, for appellee.—The Act of May 13, 1925, P. L. 644, is a reasonable exercise of the police power: Mahon v. Coal Co., 274 Pa. 489; Roumfort Co. v. Delaney, 230 Pa. 374.

The act does not transgress article III, section 7 of the Constitution of Pennsylvania: Seabolt v. Commrs., 187 Pa. 318; Com. v. Brinton, 132 Pa. 69; Roumfort Co. v. Delaney, 230 Pa. 374; Com. v. Grossman, 248 Pa. 11; Com. v. Puder, 261 Pa. 129; Harris v. Optometrical Examiners, 287 Pa. 531; Ayar's App., 122 Pa. 266; Com. v. Patton, 88 Pa. 258; Com. v. Young, 248 Pa. 458; Sayre Boro. v. Phillips, 148 Pa. 482; Chalmers v. Phila., 250 Pa. 251.

The act does not offend the Fourteenth Amendment of the Constitution of the United States: Interstate Consolidated Ry. v. Massachusetts, 207 U. S. 79; Mfg. Co. v. Worst, 207 U. S. 338; Clark v. Kansas City, 176 U. S. 114; Watson v. Maryland, 218 U. S. 173; Wil-

liams v. Arkansas, 217 U. S. 79; New York v. Zimmerman, 278 U. S. 63.

OPINION BY MR. JUSTICE FRAZER, March 18, 1929:

The question involved in these two appeals is the constitutionality of the Act of May 13, 1925, P. L. 644, which, as the title sets forth, is "an act relating to and regulating the solicitation of moneys and property for charitable, religious, benevolent, humane, and patriotic purposes." Defendants were indicted, under the act, for the unlawful sale of articles for charitable purposes without having first obtained a license therefor in the form of a certificate of registration from the state department of public welfare, in conformity with the provisions of the statute referred to. Pleas of nolo contendere were first entered but subsequently withdrawn, by leave of court, and motions to quash the indictments substituted. Under these motions the question of the act's constitutionality was raised and argued; the Municipal Court of Philadelphia upheld the claim of unconstitutionality by reason of the exemptions contained in the eleventh section and sustained the motions to quash. These judgments were reversed by the Superior Court with a procedendo and the appeals here are from that decree. The cases will be disposed of in one opinion.

The record discloses that one of the three defendants formed two organizations, one known as the "Blue Ribbon Company" and the other the "Babies Milk Fund." The first named concern handled grocery products and sold them to the latter, which in turn disposed of the articles to the public by soliciting orders, with the statement that a large portion of the proceeds would be devoted to the purchase of free milk for destitute mothers and their children. The other two defendants were copartners in organizations known as the "Children's Welfare Society," and the "Philadelphia Standard Products Company." The manner of operation of these latter concerns was practically the same as that between the

"Milk Fund" and the "Ribbon Company." Defendants made application to the department of public welfare for certificates of registration; these applications were refused after hearing.

Section 1 of the Act of 1925 provides that it shall be unlawful for any person, copartnership, association or corporation to appeal to the public for donations or subscriptions in money or other property, or sell or offer for sale any thing or object to raise money for charitable benevolent or patriotic purposes, or for other purposes specified, unless such person or organization has secured a valid certificate of registration from the department of public welfare. In section 11 of the act is set forth a number of exemptions from its provisions, to the effect that it shall not apply to "fraternal organizations incorporated under the laws of the Commonwealth, religious organizations, colleges, schools, universities, labor unions, municipalities or subdivisions thereof, community organizations within the Commonwealth, nor to charitable institutions or agencies" required to file reports with departments of the state government.

The learned trial judge found the act to be local and special legislation and as such contravened the provisions of article III, section 7, of the Constitution of Pennsylvania, on the ground that the exemptions in section 11 were unnecessarily restrictive, unreasonable and arbitrary, amounting to a denial to one person of rights given to another and making an unequal discrimination between those who are equal under the law.

Whatever plausible argument might be made as to the validity of the exemptions, there can be no acceptable contention that the act is a local or special law. Its terms speak for themselves and it would require quite a distorted construction of their plain meaning to twist out of them a different interpretation. To adopt the words of the Superior Court, "the act itself does not purport to be a local or special law. It applies to the

whole Commonwealth and is equally effective in every part thereof. It is general in its scope and purpose."

The trial judge further finds that because of the exemptions set forth in section 11 the law is inoperative, because it violates section 7, article III, of the Constitution, which forbids enactment of laws granting to corporations, associations or individuals special or exclusive privileges or immunity. The trial court concedes that the Act of 1925 was passed for the protection of the general public from deceptions practiced by unauthorized persons or associations making fraudulent appeals to the public in behalf of charity and diverting the proceeds into their own pockets. It is however insisted that, while such is the purpose of the law, the act is invalid in that it denies equal protection to all persons. As a basis for this conclusion the court expressly singles out two exemptions, namely the release of "Religious organizations" and "community organizations," from the requirement of securing a license to lawfully engage in charitable undertakings. He finds that by the first mentioned exemption an unreasonable and arbitrary discrimination is made between religious organizations and other organizations not purporting to be religious, but interested in the same general objects; the latter having no religious affiliations, are compelled to submit to the scrutiny of the department of public welfare and may not operate without a license, while the former escapes that requirement. Undoubtedly the first section of the act requires supervision by that department over associations not purporting to be religious, but since it is not special or local legislation, it affects all similar organizations throughout the Commonwealth when they undertake to secure money or other property by appeals to the general public for either religious, patriotic or charitable purposes.

It is to be observed that the Act of 1925 has no regulative concern with the nature of the organization that may propose to make public appeals for charity. It

takes for granted that such organization is proper and adequate, and lays upon the department of public welfare the duty of discovering whether or not applicant is qualified to carry out the work. The act itself deals primarily only with purposes, and directs that any organization within the Commonwealth except those above indicated, proposing to appeal to the public for pecuniary aid for the promotion of charitable purposes, must submit to an investigation by the welfare department. In the cases before us the sole ostensible purpose was that of securing help from the public for needy mothers and children. Unquestionably the concerns organized by defendants in the present instance come within the supervisory powers of the department of welfare. But the act does not single out only associations or organizations such as those. It embraces specifically any and all kinds of associations that may be entirely or in part carrying out plans and campaigns for benevolent purposes; and its enactment was an exercise by the legislature of the police power of the State to prevent the public from being made the victim of swindling and corrupt operations engineered by persons or associations hiding their illegal practices under the guise of charity. However, the legislature saw fit to exempt a number of organizations from the provisions of the act, for, as we think, wholly good and substantial reasons. The right of the legislature to enact laws containing exemptions has been so long established in this and other jurisdictions that we do not deem it necessary to refer to authorities here, only repeating what this court has often said, that there must be sound reason and real necessity for the exemptions.

Release from the obligations of the provisions of the act of the various organizations and institutions specified in section 11 is based on considerations of a most sensible character. It is the duty of the welfare department to scrutinize and investigate the standing and stability of organizations proposing to carry on charitable

undertakings. It cannot of course know from its own knowledge who are the persons forming those organizations nor the nature of the proposed plans and manner of procedure. Necessarily it must investigate, if it is asked by the organization for registration, as required by the act in question, and the result of the investigation will govern its decision as to whether or not the applicant shall be permitted to proceed with the undertaking. The legislature however recognized the fact that there are many organizations and institutions which engage in charity work, either in whole or in part, as churches, educational bodies, and other associations, of which the general public has a wide and intimate knowledge and in which it has full confidence. With this situation in mind, the lawmakers deemed it quite unnecessary to compel the department of public welfare, which is composed of enlightened persons who would undoubtedly have ample information themselves as to the character of those public bodies, to use their time and labor in gathering information they already possessed. Moreover, to require such institutions to apply for a license and submit to a wholly needless investigation of their plans and purposes would in fact have the specific result of hampering, hindering and delaying their labors and result in interference for which there would not be even an excuse. The high standing of the organizations released from the license requirement, their known capacity for effective labor in the realms of benevolence, clearly justify the exemption accorded them by the act. Such standing and adequacy may be accounted common knowledge, and undoubtedly was so considered by the legislature as proper ground for relieving them from the force and effect of the statute. We may not assume to question the intent of the legislature in the enactment of legislation founded on good faith and sound reason. We said in Com. v. Grossman, 248 Pa. 11, 15: "We have sustained classification as the proper exercise of legislative power, and held that it is a legislative question

with which the courts will not interfere, if made in good faith and based on genuine and substantial distinction of the subjects classified. What business or occupation so far affects the public welfare and good order as to require to be licensed is a matter of legislative consideration and control, which, when exercised in good faith, is outside the jurisdiction of the courts."

However, the legislature when enacting the law of 1925 recognized the fact that beyond the list of exemptions there might be and undoubtedly are many organizations undertaking work in the name of charity which a due regard for public welfare requires to be licensed. These obviously would be unknown both to the general public and to the department of public welfare. They might be of excellent repute and should have no objection to acquainting the authorities with their plans and intentions. But, as is evident by the instance before us, honest purposes and lawful methods do not always characterize enterprises put on foot seemingly in behalf of charity. Even with numerous regulative state and local laws in existence, it is suprising how many operations are carried on by persons and associations who, secreting their activities under the guise of benevolent purposes, succeed in cheating and defrauding a generous public. It is in fact amazing how profitable the fraudulent schemes and practices are to people who manipulate them; and we have a most signal instance of this common evil in the fruitful results of the operations of the three defendants in the case before us. With masterly skill they aroused the benevolent impulses of the public by appealing for aid for alleged worthy causes, decorated with the irresistably alluring titles of "The Babies Milk Fund" and "The Children's Welfare Society"; and they so eloquently and successfully solicited people to purchase the articles offered for sale by the "Fund" and the "Society," with the promise that a large portion of the proceeds would go to destitute mothers and their babes, that they amassed as the fruit of their

misrepresentations in one case the sum of $22,000, out of which they gave $862 for the purchase of milk for needy infants, and in the other the sum of $6,575.07 was realized, of which amount $343.62 was donated for free milk! Manifestly associations such as these are not in anywise of the character of those exempted from the provisions of the act. They are the ones the legislature intended the law to reach. Official supervision over them is necessary. But there is no such necessity in the case of long established institutions, of general public interest, the reputation and renown of which are state-wide. To require official investigation into their labors in behalf of charity or other worthy causes would amount to an unwarranted excess of official control, and an exercise of authority both unnecessary and unreasonable.

We concur in the finding of the Superior Court that the exemptions set forth in section 11 of the Act of 1925 are not arbitrary or unreasonable, but are based on genuine and substantial distinctions, having in mind the mischief to be remedied.

The judgment in each appeal is affirmed at costs of appellants.