## Commonwealth v. Slutzky

*Ruth Forsht*, for Commonwealth.
*David R. Levin*, for defendant.

SOFFEL, J., June 30, 1941.—On June 10, 1940, an information was lodged before Alderman Fiorucci, charging I. Slutzky, the within-named defendant, with violating the bakery laws in that he "had in his possession and offered for sale and did sell to James R. Catanzaro, an agent for the Department of Agriculture, Bureau of Food and Chemistry, egg noodles which have not been registered with the proper authorities of the Commonwealth of Pennsylvania." Defendant was

tried, found guilty, and a fine of $25 and costs imposed. The transcript of the testimony contains this statement:

". . . and the prosecutor, after being duly sworn, testified that he purchased noodles from the defendant which have not been lawfully registered according to the laws of this Commonwealth, particularly the Act of May 22, 1933, P. L. 912, as amended by the Act of July 1, 1937, P. L. 2676."

An appeal was taken to the County Court and the judgment of the alderman was affirmed. The case is now before the court en banc on defendant's motion to arrest judgment.

At the trial of the case the trial judge resolved the facts affirmatively in behalf of the prosecutor and affirmed the judgment, indicating, however, that there were questions of law which dealt primarily with the constitutionality of the acts under which defendant was arrested that should be considered on argument before the court en banc. This motion ex parte defendant is therefore before the court en banc to have determined whether the Acts of 1933 and 1937, upon which this prosecution is based, are constitutional and whether the judgment should be arrested and fine remitted and defendant discharged.

The acts of assembly involved in this discussion are the Act of May 22, 1933, P. L. 912, as amended by the Act of July 1, 1937, P. L. 2676, 43 PS §§403 to 408.

The Act of May 22, 1933, P. L. 912, is entitled:

"An act to protect the public health; defining and providing for the licensing of bakeries, and regulating the inspection, maintenance, and operation of bakeries and premises, stores and shops connected therewith; defining and regulating the manufacture, sale, and offering for sale of bakery products; conferring powers on the Department of Agriculture; and providing penalties."

Section 1 of the 1933 act defines the terms "bakery," "bakery products," "person," and "department." Section 2 thereof makes it unlawful for bakery products to be manufactured under unclean or insanitary conditions, "or to sell, expose, or offer for sale bakery products in an unclean or insanitary store or shop connected with a bakery." This section also contains other health and sanitary regulations.

Section 3 of the Act of 1933, which is the pertinent section to be here considered, provides:

` "It shall be the duty of every person, whether a resident or nonresident of this Commonwealth, *operating a bakery*, to apply to the Department of Agriculture for a license to do so, and to register with the department all bakery products baked, prepared, manufactured or compounded in such bakeries . . . and pay to the Department of Agriculture, at the time said application for registration and license is filed, an annual fee as follows: For bakeries using less than one hundred barrels of flour per week, five dollars ($5.00) ; for bakeries using one hundred barrels and less than two hundred barrels of flour per week, ten dollars ($10.00) . . . Provided, however, That any person operating a bakery in Pennsylvania who does not use more than fifty pounds of flour, flour substitute, flour mixture, or potatoes a week in the preparation of bakery products shall not be required to . . . pay a license fee, or obtain a license."

It is the contention of counsel for defendant that the proviso of this section of the Act of 1933 constitutes improper discrimination between individuals or corporations engaged in the bakery business and as such is a violation of the Fourteenth Amendment to the Constitution, which provides:

". . . nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws."

The same objection is made to the Act of 1937, which amends section 3 of the Act of 1933, supra, and re-

enacts the last-mentioned section in its amended form, preserving the same classification and exemption relating to persons or companies operating a bakery in Pennsylvania not using more than fifty pounds of flour, etc., per week. It is argued that section 3 constitutes class legislation and discriminates in favor of small bakers and that such discrimination is not consistent with the protection of public health, which the words of the title of the 1933 act indicate to be the purpose of the legislation.

In Philadelphia v. Brabender, 201 Pa. 574, 578, the court quotes from Soon Hing v. Crowley, 113 U. S. 703, as follows:

" 'The discriminations which are open to objection are those where persons engaged in the same business are subjected to . . . different privileges under the same conditions. It is only then that the discrimination can be said to impair that equal right which all can claim in the enforcement of the laws.' "

This excerpt was cited with approval in Bothwell v. York City, 291 Pa. 363 (1927).

That the legislature may enact laws which contain exemptions is long established, but there must be sound reason and real necessity for the exemption: Commonwealth v. McDermott, 296 Pa. 299.

In the case of Commonwealth v. Zacharias, 181 Pa. 126, where an act of assembly designed to protect public health forbade any person to "open or carry on as manager" any drug or chemical store or to engage in the business of compounding and dispensing medicines without having registered with the State Pharmaceutical Board and having obtained a certificate of competency from them, but exempting from its provisions widows, administrators and executors of registered pharmacists, the court, in construing said act, stated:

"The exception makes a discrimination between equally unqualified parties, giving to one exemption

from the operation of a rule enforced against the other. This is not protection to the public; but rank injustice to individuals. . . . The exception would seem to fall squarely under the rule laid down in Sayre Boro. v. Phillips, 148 Pa. 482. It is a discrimination made between those who are equal under the law. It is an arbitrary gift to one, and an arbitrary denial to another, which cannot be upheld."

In our judgment, the exemption here considered constitutes legislation that is discriminatory and, in the final sense of the word, class legislation. We are, therefore, of the opinion that section 3 of the Act of 1933, as amended by the Act of 1937, supra, is clearly unconstitutional, and particularly in its application to the instant defendant.

The Act of July 1, 1937, P. L. 2676, amends the Act of 1933 here considered, inter alia, by adding after section 5 two new sections. Section 6, paragraphs (a) and (b), which is important to the discussion here considered, reads as follows:

"Section 6. Sale and Importation of Bakery Products.—It shall be unlawful for any person—

"(a) To sell, offer for sale, or have in his possession with intent to sell, a bakery product which is not registered with the department as provided in this act. Possession of any bakery product shall be deemed prima facie evidence of an intent to sell such bakery product.

"(b) To import into this Commonwealth for sale within this Commonwealth any bakery products manufactured in a bakery in another state that is not licensed according to the laws of this Commonwealth."

The title of the Act of 1937, supra, reads as follows:

"An act to amend the act, approved the twenty-second day of May, one thousand nine hundred and thirty-three (Pamphlet Laws, nine hundred twelve), entitled 'An act to protect the public health; defining and providing for the licensing of bakeries, and regulating the inspection, maintenance, and operation of bakeries and

premises, stores and shops connected therewith; defining and regulating the manufacture, sale, and offering for sale of bakery products; conferring powers on the Department of Agriculture; and providing penalties,' further regulating bakeries and the importation of bakery products; providing for injunctions in certain cases; and changing the penalties prescribed."

Article III, sec. 3, of the Constitution of Pennsylvania provides that the subject of a bill must "be clearly expressed in its title." There are numerous decisions construing this principle. The test, as developed, requires that the title of an act must not only embrace the subject of the proposed legislation, but must also express the same so clearly and fully as to give notice of legislative purpose to those who may be especially interested therein, or so as reasonably to lead to inquiry as to what is contained in the body of the bill.

The title of the 1933 act specifically indicates an intention to protect public health by regulating, inspecting and licensing bakeries "and premises, stores and shops connected therewith." The title also provides for "defining and regulating the manufacture, sale, and offering for sale of bakery products." An examination of the title of the Act of 1933 leads to the conclusion that the legislature intended to define and regulate the manufacture, sale, etc., of bakery products, limiting it to "bakeries and premises, stores and shops connected therewith." The limitation is definitely expressed wherever any reference is made in the act to any store or shop selling bakery products. This is particularly true in section 2 of the Act of 1933 (see last two lines of the first paragraph thereof) in which there is no provision which directly or indirectly applies to a shop or store selling bakery products unconnected with a bakery.

In the instant case defendant was an individual engaged in the grocery business on Twelfth Street, South Side, Pittsburgh, Pa. His grocery store was in no way

connected with a bakery. The purchase in the instant case was a package of egg noodles which came in a wrapper and was not manufactured by defendant. It is thus apparent that the instant case could not have been brought under the Act of 1933 alone. But in 1937 the legislature amended the Act of 1933 and added to the title of the 1933 act this clause: "Further regulating bakeries and the importation of bakery products." Does the word "importation" in the title of the Act of 1937 enlarge the scope so as to permit broadening the penal provisions? Construing the word "importation" as used in the title in connection with subsection (b) of section 6 of the Act of 1937 this may be conceded, since this section does deal with the importation of bakery products, but subsection (a) of section 6, which is the section under which this prosecution was brought, presents a different situation.

Section 6 provides:

"It shall be unlawful for any person—

"(a) To sell, offer for sale, or have in his possession with intent to sell, a bakery product which is not registered with the department as provided in this act. Possession of any bakery product shall be deemed prima facie evidence of an intent to sell such bakery product."

The word "importation" means to bring in from without: such as the products from one State into another State. Subsection (a) makes it unlawful to sell unregistered bakery products whether imported or not. Certainly an analysis of the title read in connection with section 6, subsec. (a), fails to put the owner of a store or shop unconnected with a bakery but selling bakery products on notice that he is within the purview of the act and subject to prosecution under its penal sections.

We, therefore, conclude that the title of the Act of 1937 is defective in that it fails to give adequate notice of the inclusion of a new class of persons or corporations, to wit, operators of stores and shops unconnected

with bakeries. There is nothing in the title to make this class of persons realize that they are subject to the prosecution and penalties outlined in section 6(a). Since the instant prosecution is based on this section we must conclude that it is unconstitutional and invalid insofar as it applies to the instant defendant.

Subsection (a) of section 6 of the Act of 1933 (section 2 of the Act of 1937) is also invalid and unconstitutional for the reason that its provisions are unreasonable and arbitrary and bear no relation to the object sought to be obtained.

In Jay Burns Baking Co. et al. v. Bryan, etc., et al., 264 U. S. 504, the Supreme Court declared invalid a Nebraska law regulating the weight of loaves of bread within a two-ounce tolerance as subjecting bakers and sellers of bread to restrictions which are unreasonable and arbitrary and therefore repugnant to the Fourteenth Amendment to the Constitution of the United States.

Subsection (a) of section 6 of the Act of 1933 (section 2 of the Act of 1937) is objectionable because it places unreasonable burdens upon the dealer who handles bakery goods that have been manufactured elsewhere.

Both the Act of 1933 and the Act of 1937 exempt certain bakeries from the necessity of licensing and registration of their products. There is no requirement that the label or wrapper of bakery products contain any representation, warranty, or mention of the fact that the bakery in which the product involved was manufactured was licensed by the State of Pennsylvania, or that licensing is not required by the manufacturer of a specific product under the exemption of the act. It is practically impossible for the dealer in such product to make any investigation which would eliminate the possibility of his prosecution under these acts for the sale of an unregistered bakery product. The requirement of section 3 that the label contain either the

name of the manufacturer or of the distributor makes it even worse for the seller of the bakery products because the inclusion of the name of the distributor gives no indication as to whether the product was baked in a bakery outside the State or within the State. It is, therefore, our conclusion that subsection (*a*), sec. 6, imposes an unreasonable burden on the seller of bakery products and makes "the probability of unintentional transgression so great as unreasonably to expose those engaged in the business to the danger of criminal prosecution."

The prosecution in the instant case is not conditioned on any lack of quality or deficiency in the product—the egg noodles—nor on any finding that the product is unhealthful or lacking in quality.

In the case of Rohrer v. Milk Control Board, 322 Pa. 257, in which a majority of the Supreme Court of Pennsylvania reversed the Superior Court and upheld the constitutionality of the Milk Control Act, the Supreme Court, in adopting the dissenting opinion of Keller, P. J., said, at page 267:

"The Fifth Amendment, in the field of federal activity, and the Fourteenth, as respects state action, do not prohibit government regulation for the public welfare. They merely condition the exertion of the admitted power, by securing that the end shall be accomplished, by methods consistent with due process. And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained."

This principle is basically applicable to the case here considered. We, therefore, conclude that subsection (*a*), sec. 6, of the Act of 1937, amending the Act of 1933, is unconstitutional. The judgment as entered will therefore be opened and judgment entered in favor of defendant. Fine and costs to be remitted.

*Order*

And now, to wit, June 30, 1941, defendant's motion to arrest judgment is granted, the judgment as entered is opened, and judgment entered in favor of defendant. Defendant is discharged and restitution of fine and costs awarded. County to pay costs.