## Young Men's Christian Association

WOODWARD, Deputy Attorney General, August 21, 1947.—We have your request for advice as to whether the State Young Men's Christian Association of Pennsylvania is exempt from compliance with the provisions of the Act of May 13, 1925, P. L. 644, and therefore, not required to obtain a certificate of registration before soliciting funds for the purposes enumerated in the act.

You inform us that several of the local branches operate under certificates of registration; that until you receive a ruling from the Department of Justice regarding the claim of the State organization, you hesitate to request compliance with the provisions of the law by all of the local groups; and that this organization claims exemption from the provisions of the act on the grounds that it is a religious organization.

With your request, you have transmitted a copy of the charter granted June 5, 1886, and a copy of the constitution adopted November 25, 1930.

The title of the Act of May 13, 1925, P. L. 644, as amended, 10 PS §141, et seq., usually referred to as the Solicitation Act, is as follows:

"An act relating to and regulating the solicitation of moneys and property for charitable, *religious*, benevolent, humane and patriotic *purposes*." (Italics supplied.)

Section 1 of the Solicitation Act, supra, as amended, 10 PS § 141, provides as follows:

"Thirty days after the approval of this act it shall be unlawful for any person, copartnership, association, or corporation, except in accordance with the provisions of this act, to appeal to the public for donations or subscriptions in money or in other property, or to sell or offer for sale to the public any thing or object whatever to raise money, or to secure or attempt to secure money or donations or other property by promoting any public bazaar, sale, entertainment or exhibition, or by any similar means for any charitable, benevolent, or patriotic purpose, or for the purpose of ministering to the material or spiritual needs of human beings, either in the United States or elsewhere, or of relieving suffering of animals, or of inculcating patriotism, unless the appeal is authorized by and the money or other property is to be given to a corporation, copartnership, or association holding a valid certificate of registration from the Department of Welfare, issued as herein provided."

Subsequent sections of the act regulate the applications for and the issuing of such certificates, and prescribe the conditions under which such appeals for funds, etc., may be made.

The purpose of the act is stated in the case of Commonwealth v. McDermott, 10 D. & C. 618, 621 (1928), as follows:

"The basis of the act in question is protection to the public from fraudulent solicitation for funds under the guise of aiding a charity. The purpose is a laudable one and should be encouraged. But that purpose must be accomplished, if at all, in a proper manner consistent with constitutional rights."

The purpose of the act is further set forth in the case of Commonwealth v. McDermott, 296 Pa. 299, 304 (1929), wherein it is stated:

". . . the act . . . embraces specifically any and all kinds of associations that may be entirely or in part carrying out plans and campaigns for benevolent purposes; and its enactment was an exercise by the legislature of the police power of the State to prevent the public from being made the victim of swindling and corrupt operations engineered by persons or associations hiding their illegal practices under the guise of charity."

Under the provisions of section 11 of the Solicitation Act, supra, as amended, 10 PS §151, certain organizations and purposes are exempt as follows:

"This act shall not apply to fraternal organizations incorporated under the laws of the Commonwealth, religious organizations, raising funds for religious purposes, colleges, schools, universities, or associations of alumni or alumnae thereof, raising funds for fellowships or scholarships, federated women's clubs, labor unions, municipalities, or subdivisions thereof, nor to charitable institutions or agencies required by the provisions of existing law to file reports with the Department of Welfare or with any other department or office of the Commonwealth, nor to any war veterans' organization or any subordinate units thereof, whenever the purpose for which it is soliciting funds has been approved by the Department of Military Affairs."

In the case of Commonwealth v. McDermott, 10 D. & C. 618, 620 (1928), it was stated:

"This section limits the act by exempting from its provisions various organizations which would otherwise be within its express provisions. . . .

". . . religious organizations are exempt, thus contradicting the provision of the title which makes the act apply to solicitations for religious purposes."

The sole precise question suggested by your request for advice is whether the State Young Men's Christian

Association of Pennsylvania is a religious organization, within the meaning of section 11 of the Solicitation Act, supra, and accordingly, exempt from compliance with the terms of the act.

The purpose of the State Young Men's Christian Association of Pennsylvania, as set forth in the certificate of incorporation, dated June 5, 1886, is as follows:

"This corporation is formed for the purpose of establishing and assisting Young Men's Christian Associations, and promoting the spiritual, mental, social and physical conditions of young men, in accordance with the aims and methods of the Young Men's Christian Associations of this Commonwealth, and to this end to be capable of taking, receiving and holding absolutely and in trust, for its general uses and purposes, and for any particular department of its work, and for any particular Young Men's Christian Association in the State, by purchase, gift, grant, devise or otherwise howsoever, real and personal estate, to sell and convey or mortgage the same, and to have all other powers incident to corporation to the 'first class.' "

The purpose includes promoting different conditions —spiritual, mental, social and physical. Mental, social and physical obviously are not religious activities.

The word "spiritual" has a much broader significance than the word "religious".

In Webster's New International Dictionary, unabridged, the word "spiritual" is defined as follows:

"1. Of, pertaining to, or consisting of, spirit; not material; incorporeal; as, a *spiritual* substance or being.

"2. Of or pertaining to the intellectual and higher endowments of the mind; mental; intellectual; also, highly refined in thought or feeling.

"3. Of or pertaining to the moral feelings or states of the soul, as distinguished from the external actions; reaching and affecting the spirit.

"4. Of or pertaining to the soul or its affections as influenced by the divine Spirit; controlled and inspired by the Spirit; proceeding from the Holy Spirit; pure; holy; divine; heavenly-minded; . . .

"5. Of or pertaining to sacred things or the church; sacred; as *spiritual* songs; not lay or temporal; ecclesiastical; as, lords *spiritual* and temporal."

Both in the definition of its charter purpose, and in the actual activities of the associations, religious effort does not predominate. One of the four activities listed, is "spiritual", but spiritual activity, by the definition of the word, is not limited to religious activity.

The objects of the association, as set forth in the constitution, adopted November 25, 1930, are as follows:

"(1) To promote and assist the work of the Young Men's Christian Associations of every kind in the State of Pennsylvania.

"(2) To organize new Young Men's Christian Associations in the State, wherever and whenever deemed expedient by its State Executive Committee.

"(3) To promote, supervise and administer such other lines of work as may, in the judgment of its State Executive Committee, tend to the spiritual, social, moral, intellectual, or physical improvement of the Youth and Adults of Pennsylvania."

From the foregoing purpose of the corporation, set forth in the charter, and the foregoing objects of the association, set forth in the constitution, it is apparent that not all of the purposes and objects of the association are those of a religious organization.

There is nothing in the foregoing provisions, contained either in the charter or in the constitution, which establishes the State Young Men's Christian Association of Pennsylvania as a religious organization. While some of its purposes and objects may be spiritual in nature, yet the organization itself is largely educa-

tional and charitable in its purposes and objects, and purely commercial in many of its operations.

Unless an organization is exempt under the provisions of section 11, it is subject to the requirements of the licensing provisions of the act, regardless of the worthiness of the purposes of the organization and regardless of how well known the organization may be.

In 1925-1926 Op. Atty. Gen. 527, 528, it is stated:

"This section [Section 11] expressly exempts religious organizations from the operation of the Act. Included in this term are churches, religious societies, religious corporations (sometimes called ecclesiastical corporations), and religious associations (incorporated and unincorporated)."

In order to determine whether the association under discussion is a "religious organization", consideration must be given to definitions of that and similar terms.

In Black's Law Dictionary, page 1524, a "religious society" is defined as follows:

"A body of persons associated together for the purpose of maintaining religious worship. The communicants of a denomination who statedly attend services in the church edifice. Fiske v. Beaty, 201 N. Y. S. 441, 444, 206 App. Div. 349."

A "religious society" has been defined as follows:

"A religious society is an assembly met, or a body of persons who usually meet, in some stated place for the worship of God and religious instruction": 54 C. J. 7, §1; Silsby v. Barlow, 16 Gray (Mass.) 329.

"It is made up of individuals who have associated together for religious as opposed to secular purposes, having no regard to the particular mode or manner of constituting or forming the society, or to its being incorporated, although the term as used in particular statutes may have reference to incorporated or quasi-incorporated religious societies": 54 C. J. 7, §1.

" '. . . The term includes all religious societies or congregations met for public worship without regard

to their being incorporated and may or may not include a church or spiritual body.' Silsby v. Barlow, 16 Gray (Mass.) 329": 1925-26 Op. Atty. Gen. 525, 29.

A "religious or church society" has also been defined as:

". . . a voluntary organization, whose members are associated together not only for religious exercises but also for the purpose of maintaining and supporting its ministry and providing the conveniences of a church home and promoting the growth and efficiency of the work of the general church of which it forms a coordinate part": First Presbyterian Church v. Dennis, 178 Iowa 1352, 161 N. W. 183; Runkel v. Winemiller, 4 Har. and M'H. (Md.) 429; Jones v. State, 28 Neb. 495.

A "religious corporation" has been defined as follows:

"A religious corporation in American Law is a private corporation formed by or pursuant to law to hold and administer the temporalities of a church": II Century Dictionary & Cyclopedia 1275.

" 'A religious corporation is one whose purposes are directly and manifestly ancillary to divine worship or religious teaching. It is not necessarily a church in the one acceptation of the term, or even a religious society. A corporation whose charter powers are to be used in and [sic—"aid"?] of the propagation and practice of a religious belief is a religious corporation.' In re St. Louis Institute of Christian Science, 27 Mo. App. 633": 1925-26 Ops. Atty. Gen. 525, 529.

"*A religious corporation is a corporation whose purposes* as defined by charter or statute *are directly ancillary to divine worship or religious teaching,* although the scope and application of the term may be defined and restricted by the terms of the statute in which it is used. *A corporation established for purely academic purposes, for education in literature and in the arts*

*and sciences, is in no sense a religious corporation, even though engaged in educating youths for the ministry,* or place under the management of a religious body. Nor is a charitable society made into a religious corporation by being controlled by a church. A statute defining a religious corporation as a corporation created for religious purposes, has been held to apply to a corporation organized to provide churches for seamen, although other corporations so closely allied to religion that they may be broadly classed as religious corporations have been held not to be within the class designated as such by a particular statute": 54 C. J. §3. (Italics supplied.)

In 1925-1926 Op. Atty. Gen. 527, 530, it is stated:

". . . the term 'religious organization', as used in this Act includes every religious body *definitely constituted,* which has for its purpose the propagation of the reverent acknowledgment both in heart and in act of a Divine being, *or* whose purpose is directly and manifestly ancillary to divine worship or religious teaching, *or* whose members are associated together not only for religious exercises, but also for the purpose of maintaining and supporting its ministry and providing the conveniences of a church home and promoting the growth and efficiency of the work of the general church of which it forms a co-ordinate part, *or* one having power to sue and be sued and to hold and minister all the temporalities of a religious society or church as distinguished from the body of communicants or members united by a confession of faith, *or* one whose officers, agents and members work together for a common religious or spiritual end."

In view of the foregoing definitions, it is difficult to state a satisfactory comprehensive rule defining "a religious organization"; however, it may be stated briefly that a religious organization is a body of individuals associated together for religious purposes, such

as divine worship, or religious teaching, as opposed to secular purposes; and that religious purposes are those ancillary to divine worship or religious teaching.

An example of a religious organization, within the meaning of the Solicitation Act, is discussed in the case of Commonwealth v. Schuman, 125 Pa. Superior Ct. 62 (1937), in which it was stated:

". . . its purpose [the corporation] is the dissemination of Bible truths in various languages, by means of the publication of tracts, pamphlets, papers and other religious documents . . ."

It will be observed that while the Solicitation Act relates to and regulates, inter alia, the solicitation of moneys and property for both charitable and religious purposes, the exemption granted by the act extends to religious organizations, but not to charitable organizations as such, but only to charitable institutions or agencies required by the provisions of existing law to file reports with the Department of Welfare or with any other department or office of the Commonwealth. Therefore, it is necessary to bear in mind the distinction between religious organizations and those which are institutions of purely public charity.

A definition of the word "charity", contained in Webster's New International Dictionary, second edition, and cited with approval in the case of Y. M. C. A. of Germantown v. Philadelphia, 323 Pa. 401, 411 (1936), is as follows:

" 'An organization or institution engaged in the free assistance of the poor, incapacitated, distressed, etc.' "

In Black's Law Dictionary, page 312, a "charitable corporation" is defined as follows:

"One that freely and voluntarily ministers to the physical needs of those pecuniarily unable to help themselves. In re Rockefeller's Estate, 177 App. Div. 786, 165 N. Y. S. 154, 158; Brooklyn Children's Aid Society

v. Prendergast, 166 App. Div. 852, 151 N. Y. S. 720, 723."

In Black's Law Dictionary, page 312, the term "charitable use" is defined as follows:

"A gift for a 'charitable use' is a gift for the benefit of persons by bringing their hearts and minds under the influence of education or religion, by relieving their bodies of disease, suffering, or constraint, by assisting to establish them for life, by erecting or maintaining public buildings, or in other ways lessening the burdens or making better the condition of the general public, or some class thereof, indefinite as to names and numbers. In re Coleman's Estate, 167 Cal. 212, 138 P. 992, Ann. Cas. 1915C, 682."

The word "charity" is defined as follows:

". . . 'charity' includes substantially any scheme to better the conditions of any considerable part of society, and includes any gift, not inconsistent with the law, which tends to promote science or the education, enlightenment, or the amelioration of the conditions of mankind, or which is for the public convenience. Wilson v. First Nat. Bank, 164 Iowa 402, 145 N. W. 948, Ann. Cas. 1916D, 481": 10 Am. Jur. p. 586, §3.

Cognizance must be taken of the distinction between the charitable work of religious organizations and that performed by educational and other associations.

In the case of Commonwealth v. McDermott, 296 Pa. 299, 305 (1929), the court said:

"The legislature however recognized the fact that there are many *organizations* and institutions *which engage in charity work,* either in whole or in part, *as churches, educational bodies, and other associations,* . . . " (Italics supplied.)

It must be remembered that religious organizations are exempt from compliance with the terms of the Solicitation Act, while charitable organizations, as such, are not exempt, as hereinbefore stated.

The constitutionality of the act was sustained in the case of Commonwealth v. McDermott, 296 Pa. 299 (1929), which upheld the right of the legislature to enact laws containing exemptions; however, that case is not decisive of the question herein presented.

In the case of Young Men's Christian Association of Germantown v. Philadelphia, 323 Pa. 401 (1936), the association sought to have its real property, consisting of the building in which its organized activities were carried on, declared wholly exempt from real estate taxes under the exemption from taxation statutes cited which authorize such exemption, inter alia, for "actual places of religious worship" and "institutions of purely public charity".

The association based its claim, not on the ground that it was a place of religious worship, but on the ground that the association was a public charity.

The defense was that the operation of a lodging and rooming-house business, from which large revenues were derived, deprived the association of the right to total exemption.

Concerning the nature of the activities of the association, the court stated, p. 404:

"There is no religious qualification for membership. Control of the association is vested in a board of managers, who are elected by members with voting privileges, and serve without compensation. The officers of the board of managers select a general secretary, a full-time, paid employee, who has actual charge of all the activities of the association. Under him are paid under-secretaries who supervise the various departments of its work. The association ministers to the physical, social, educational and religious needs of boys and young men, affords them physical training and offers them recreation in games and sports, conducts classes in public speaking, salesmanship, and sociology, and other high school courses, encourages

social contacts between its members in the form of club meetings, lectures and small entertainments, and offers religious instruction in Bible classes and devotional meetings." (Italics supplied.)

As to whether the dormitories were essential in the carrying out of the association's charitable activities, the court states, page 414:

*"Counsel for appellant contend that the dormitories "were essential in the carrying out of the association's charitable activities,* that these dormitory rooms enabled the association to provide a comfortable, decent home, surrounded by proper influences, to men coming to the city for employment or those having no homes in the city. Being away from home, these men are particularly in need of moral, spiritual and physical guidance and protection and by being able to provide a home for them in the building, the workers of the association are able to reach and minister to their needs and wants, and to establish contacts with them, in a way which would be impossible if these men were living in rooming houses, scattered throughout the vicinity.' *Should this argument be accepted, it would lead to legally unacceptable conclusions.* Not only could the plaintiff association build a lodging house large enough to take care for a reasonable but substantial rental of every single male in its vicinity and claim tax exemption on the ground that thereby it was the better able to minister to the moral, spiritual and physical wants of its lodgers, but every other institution of benevolence or charity in this Commonwealth could do likewise. Such institutions could maintain on a commercial basis restaurants, barber shops, golf links, baseball parks, billiard and pool rooms, and other establishments where young men like to congregate and then claim exemption from all taxes on such establishments on the ground that through them the institution could maintain closer contacts with those young

men whom it desired to uplift spiritually. *Even the most praiseworthy institutions must expect to support the government by paying taxes when it engages in commercial activities no matter how it uses the net proceeds of such activities.*" (Italics supplied.)

The court also stated, page 412:

"*The part of the Germantown Y. M. C. A. which contains lodging facilities is primarily commercial in character.* It competes with lodging houses which are *avowedly* commercial in character. *The fact that the environment is religious, and mentally and morally uplifting, does not alter the fact* that the renting of its rooms is substantially like the renting of rooms in other lodging houses." (Italics supplied.)

And at page 420:

"The view we have herein taken of the question before us is in accord with the views of the appellate courts in many other states on the same or similar questions . . ." And see cases cited.

The court reached the conclusion, page 424:

"Plaintiff's dormitory in which rooms are rented commercially to lodgers, is not so clearly 'necessary for the occupancy and enjoyment' of that part of plaintiff's building in which its work of charity or benevolence is carried on as to entitle it to exemption from paying taxes on the dormitory."

From the foregoing, it is obvious that the State Young Men's Christian Association of Pennsylvania is not a religious organization, but a purely public charity, and only to the extent indicated.

A desire to be generous toward institutions which are doing praiseworthy work must not mislead us into investing the word "religious organization" with unwarranted meanings. As stated in the case of Young Men's Christian Association of Germantown v. Philadelphia, *supra*, page 411:

"A judicial desire to be liberal toward institutions which are doing praiseworthy public work has some-

times led the courts to invest the word 'charity,' as used in the above excerpt from the Constitution, with a meaning not warranted either lexicologically or by a consideration of the ideology of the constitutional provision invoked. Webster's New International Dictionary, 2d edition, defines a 'charity' (in the institutional sense) as 'an organization or institution engaged in the free assistance of the poor, incapacitated, distressed, etc.'

". . . the Young Men's Christian Association has been held not to come within the description of a religious society, inasmuch as it exercises no ecclesiastical control over its members, prescribes no form of worship for them, and does not subject to church discipline such of them as fail to conform to its rules": 23 R. C. L. 422.

The Salvation Army has been held to be within the scope of a similar law, by an opinion of the Attorney General of the State of North Carolina, dated September 28, 1946, in which it is stated, in part, as follows:

"Nothing in this article shall apply to any church, religious denomination, . . .

"While it may be true that the strict ecclesiastical activities of the Salvation Army may come within the meaning of some of these exemptions, nevertheless, the Salvation Army in our opinion is vastly much more than a religious organization; and it is our opinion that all of the solicitations of the Salvation Army and the organization itself by reason of the breadth and scope of its activities is subject to the application of this law."

We are of the opinion, therefore, and you are accordingly advised, that the State Young Men's Christian Association of Pennsylvania is not exempt, as a religious organization, from compliance with the provisions of the Act of May 13, 1925, P. L. 644, as

amended, 10 PS §141, et seq., usually referred to as the Solicitation Act; and, therefore, it is required to obtain a certificate of registration before soliciting moneys and property for the purposes enumerated in the act.