THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. HELEN LE GRANDE, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. SARAH MALONEY, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. ANNE SORISE, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. VASTINER KING, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. DOLORES BENDER, True Name DOLORES BROWN, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. LOIS BROWN, Respondent.

Argued October 19, 1955; decided January 12, 1956.

*Edward S. Silver, District Attorney* (*Aaron Nussbaum* of counsel), for appellant. I. The Appellate Division erred in reversing the judgment and dismissing the indictment. (*People* v. *Bellows,* 281 N. Y. 67; *People* v. *Scheinman,* 295 N. Y. 142; *People* v. *Potskowski,* 298 N. Y. 299; *People* v. *Rudolph,* 303 N. Y. 73; *People* v. *Lee,* 308 N. Y. 302.) II. Guilt was established beyond a reasonable doubt. III. A fraudulent representation may be effected in myriad ways: by acts as well as by words, by half truths calculated to mislead, by reckless statements made without knowledge, by silence when there is a duty to speak, by false impressions as to charitable or benevolent purpose. (*People* v. *Gellard,* 296 N. Y. 516; *People* v. *Yarmish,* 189 Misc. 1041: *People* v. *Suffern,* 242 App. Div.

353; *People* v. *Avery,* 254 App. Div. 780, 279 N. Y. 601.) IV. Respondents were properly convicted of the crime of fraudulently obtaining property for charitable or benevolent purposes. (*People* v. *Powers,* 147 N. Y. 104; *Butterworth* v. *Keeler,* 219 N. Y. 446; *Matter of Roland,* 225 App. Div. 118; *Matter of Frasch,* 245 N. Y. 174.) V. The conviction of respondents does not in any way offend against constitutional guarantees of freedom of religion. (*Davis* v. *Beason,* 133 U. S. 333; *Reynolds* v. *United States,* 98 U. S. 145; *Kedroff* v. *St. Nicholas Cathedral,* 344 U. S. 94.) VI. Respondents were properly convicted of the crime of conspiracy. (*People* v. *Winter,* 288 N. Y. 418; *People* v. *Van Tassel,* 156 N. Y. 561; *People* v. *Friedlander,* 280 N. Y. 437; *People* v. *Miles,* 192 N. Y. 541.) VII. The acquittal of defendant Davis did not bar a conviction of the other defendants. (*People* v. *Kuland,* 266 N. Y. 1; *People* v. *Scheppa,* 295 N. Y. 359.) VIII. The jurisdiction was properly laid in Kings County as to each of the respondents. (*People* v. *Charleton,* 157 Misc. 570.) IX. The trial court properly admitted the statement of defendant Davis into evidence under proper instructions.

*Arnold W. Wallach, Harry Chiert* and *Bernard Chiert* for respondents. I. The alleged acts on the part of respondents were not encompassed within the intendment of section 934 of the Penal Law and said section 934 of the Penal Law should not be construed to cover the alleged acts on the part of respondents. (*People* v. *Adamkiewicz,* 298 N. Y. 176; *Hornstein* v. *Paramount Pictures,* 292 N. Y. 468; *People* v. *Levy,* 283 App. Div. 383.) II. Section 934 of the Penal Law, as applied to the evidence and state of facts in this case, is unconstitutional in that it violates the First Amendment to the United States Constitution, as the same is incorporated into the Fourteenth Amendment of the United States Constitution and, as such, deprives respondents of due process, and that said section 934, as applied, is vague, ambiguous, indefinite, uncertain and has given respondents no notice of what acts they would commit, would constitute a violation of said section. (*Cantwell* v. *Connecticut,* 310 U. S. 296; *Everson* v. *Board of Educ.,* 330 U. S. 1; *Kedroff* v. *St. Nicholas Cathedral,* 344 U. S. 94.) III. There was no proof of any conspiracy between respondents. (*People* v. *Winters,* 288

N. Y. 418; *People* v. *Harris,* 294 N. Y. 424; *People* v. *Friedlander,* 280 N. Y. 437.) IV. Since defendant Davis was acquitted, respondents should have been acquitted. (*People* v. *Kuland,* 266 N. Y. 1; *People* v. *Scheppa,* 295 N. Y. 359.) V. The court erred in admitting the alleged confessions and statements — that such statements were binding only on the particular deponent.

VAN VOORHIS, J. This is an appeal by the People from orders of the Appellate Division reversing judgments of the Kings County Court on the law and the facts, which convicted defendants of the crimes of fraudulently obtaining and conspiring to obtain property for charitable or benevolent purposes in violation of section 934 of the Penal Law. The indictments were dismissed by the Appellate Division upon the ground that there is no evidence that appellants violated the provisions of this criminal statute. The facts are stated in its opinion as follows: " Appellants solicited funds on the streets of New York City for a period of more than a year, as set forth in the indictment. The practice was to sit in front of department stores and other public places and receive coins from the public in a metal cup or plate held in the lap of each appellant. Each appellant was dressed in the habit or garb common to nuns or sisters, although the particular combination of elements of the attire was not significant of any particular order or organization. Each appellant was at all such times in possession of a written certificate of authority to make collections on behalf of a religious corporation duly organized under the Religious Corporations Law. There was evidence that, under an agreement with the corporation, each appellant delivered $2.50 a day to the pastor of the corporation's church, and retained the remainders of the collected funds as her personal compensation. There was also evidence of another version of the agreement, which was testified to at the trial, that each appellant delivered all collected funds to the pastor and received from him about $10 a week as compensation, the pastor retaining $2.50 a day for his personal needs and applying remainders to other church purposes."

There was evidence authorizing the jury to find the first of these versions, and by their verdicts of conviction, the jury found that the agreement between defendants and this religious

corporation, known as the New Day Holy Church of God, Inc., incorporated in 1945, was that each defendant delivered $2.50 a day to the pastor (or "bishop", as he is termed), and retained the rest of the collected funds as her personal property.

The question is whether these acts by these defendants, the facts concerning which are thus established, violated section 934 of the Penal Law. This section reads as follows: "§ 934. Fraudulently obtaining property for charitable purposes. A person, who wilfully, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or any money or property, for any alleged or pretended charitable or benevolent purpose, is punishable by imprisonment for not less than one nor more than three years, or by a fine to an amount not exceeding the value of the money or property obtained, or by both."

Laying aside whether there was anything fraudulent in these women dressing themselves to simulate nuns, apart from the rest of their conduct, it may well be that there would have been no crime under this section if all of their collections had been delivered to the pastor for the use of this church, after deducting a reasonable amount commensurate with their services in collecting this money.

This church is assumed to be a bona fide religious corporation, and collections made for its purposes, including payment of part of the salary of its pastor, would not be in violation of section 934. We even assume that the $2.50 apiece which the jury found was paid to the pastor went for religious purposes. It does not follow from this circumstance, however, that the conduct of these defendants did not violate section 934 of the Penal Law. These women were not soliciting funds for any charitable or benevolent purposes, insofar as their own profit from the transactions was concerned. The laborer is worthy of his hire, and if they had merely retained for themselves reasonable compensation for their services in obtaining these funds, giving the rest to the church, quite possibly no crime would be involved. But the main object of this solicitation was defendants' own emolument; they were not working at a fixed stipend for this church or even on a commission basis, but they were, if one may use the phrase, the owners of the equity interest in this enterprise. They were in business for themselves, collecting

not primarily for the church or for any charitable or benevolent purpose, but for their own financial gain. As the contributions increased, these defendants kept the entire excess over $2.50 for their own. They would have been willing to join up with any religious organization which would lend color to their efforts to make money by pretending to the public that they were dedicated to its work, and lived in a state of poverty, chastity and obedience. All of this adds up to a fraud upon the public.

The question remains whether section 934 of the Penal Law has been violated, in view of its limitation to the collection of money for alleged or pretended "charitable or benevolent" purposes. It is said that these collections, at worst, were for a pretended religious purpose, and that therefore the acts of defendants do not fall within the categories of ostensible "charitable" or "benevolent" undertakings. We think that these funds were ostensibly being solicited for "benevolent" purposes. In *Matter of Rockefeller* (177 App. Div. 786, 791), the Appellate Division said: "In its popular acceptation a charitable corporation is one that freely and voluntarily ministers to the physical needs of those pecuniarily unable to secure for themselves, while a benevolent corporation is one that ministers to all, and the purpose may be anything that promotes the mental, physical or spiritual welfare of man."

It would be superfluous to cite the numerous decisions upon the subject of charitable trusts. Without considering the situation respecting other religions, Christianity is founded upon the concept of the fatherhood of a benevolent God and the brotherhood of man under the golden rule. This church purports to be a Christian church, and it can hardly be said that the objects of such an organization are so limited or selfish in character as to deny that its prime concern is for the spiritual health and welfare of mankind. It would be a contradiction in terms to hold that the object of the Christian religion, in its broadest connotation, is not "benevolent".

The orders of the Appellate Division should be reversed, and a new trial ordered.

CONWAY, Ch. J., DESMOND, FULD, FROESSEL and BURKE, JJ., concur; DYE, J., taking no part.

Orders reversed, etc.